Leihinahina Sullivan, Pro Se Defendant
Care of FDC
PO Box 30080
Honolulu, HI 96820

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

SEP 20 2019

at 2 o'clock and 48 min. P M
SUE BEITIA, CLERK

In The United States District Court
For the District of Hawaii

CR No. 17-000104 JMS

United States of America )
                         )
         Plaintiff,      )   CR. No. 17-000104 JMS
                         )
                         )   Motion to Recuse Honorable
                         )   Admistrative Judge Seabright
                         )   From Leihinahina Sullivan's
    v.                   )   Case; Certificate of Service
                         )
Leihinahina Sullivan,    )
                         )
    Pro Se Defendant.    )
                         )

Motion to Recuse Honorable Administative Judge Seabright from Leihinahina Sullivan's Case

Due to no access to necessities to provide a defense for myself, I am using what limited resources I have to file this instant motion as a Pro Se Defendant.

I declare, that all the information provided herein is made to the best of my belief and understanding.

Leihinahina Sullivan Pro Se

TRULINCS 09779122 - SULLIVAN, LEIHINAHINA - Unit: HON-C-A

---

FROM: 09779122
TO:
SUBJECT: 1. Motion Recusal of Judge (FILE)
DATE: 09/15/2019 05:35:51 PM

Motion to Recuse Honorable Administrative Judge Seabright from Leihinahina Sullivan's Case

I. Leihinahina Sullivan's ("Sullivan") United States Constitutional Rights Under the Fourth (4th); Fifth (5th) and Fourteenth (14th) Amendment Rights Seeks the Recusal of Honorable Chief Administrative Judge Seabright pursuant to 28 U.S.C.A. Section 47, 144, 455, and Canons 3(A)6 & 3(A)4 for Judge Responsibilities.

The United States Supreme Court made some general observations about factors that are relevant in determining the process of law, either generally or under the Fifth or Fourteenth Amendment of the United States Constitution, which requires disqualification of an adjudicator from participation in a particular judicial of quasi-judicial proceeding. In view of the powerful and independent interest in fair adjudicative procedure embodied in the due process clause of the Federal Constitution's Fifth Amendment, justice was required to satisfy the appearance of justice, and such stringent rule might sometimes bar trial judges who had no actual bias and who would have done their best to weigh the scales of justice equally between contending parties, the Supreme Court commented in Marshall v. Jerrico, Inc. (1980) 446 U.S. 2385, 64 L. Ed. 2d 182, 100 S. Ct. 1610. In that holding it was no violation of Fifth Amendment due process for an assistant regional administrator of the Federal Department of Labor's Employment Standards Administration to assess civil penalties for violations of child labor laws - even though such assessments were returned to the agency, pursuant to federal statute, to reimburse its costs-the court said, as one ground for his holding, that strict due process requirements were not applicable to the assistant regional administrator, because his function was NOT A JUDICIAL ONE but akin to that of a prosecutor or civil plaintiff. The court reversed the judgment to the effect that a fine assessed by the administrator against a corporation was improper.

Sullivan's case began on June 1, 2016 in which Dkt. 232, 233, details the procedural history of the case. In the same courtroom with Sullivan that was held back to back was United States v. Katherine P. Kealoha, Cr. No. 17-00582 JMS-RLP. EFC No. 1.

II. Facts Relating To This Motion to Recuse Honorable Administrative Judge Seabright ("Judge Seabright") from Sullivan's Case

There were several instances where Judge Seabright made conclusions on the record about Sullivan in hearings which caused concern for Sullivan as confusing her for the case that was occurring intermittently in the same Courtroom, the case against Katherine Kealoha and Co-Defendants. Sullivan (native Hawaiian female) concluded that Judge Seabright was confusing her with Katherine Kealoha (native Hawaiian female) here are the reasons why.

In the transcript hearing of 02/18/2018, Judge Seabright assumed that Sullivan presented the Court with unauthorized filings which it was not true.

"THE COURT: All right. Well, can we have that discussion certainly. I don't have a problem with having that discussion. Okay. One other matter before we go back to that then, I--have you folks see these third party motions regarding bank accounts that's filed on the caption of the United States Attorney?

MS. PERLMUTTER: Yes. So, Your Honor, this is a separate matter.

THE COURT: A separate matter but I want to take it up since we're here.

MS. PERLMUTTER: Sure.

THE COURT: And figure out what this is about and what we should do about these filings.

MS. PERLMUTTER: Sure. The--

THE COURT: That should not be on the caption that's on there, I believe.

TRULINCS 09779122 - SULLIVAN, LEIHINAHINA - Unit: HON-C-A

---

MS. PERLMUTTER. It is a--it's a separate matter that deals with the right to financial Privacy Act.

THE COURT: Right.

MS. PERLMUTTER: And such that when issuing trial subpoenas for updated information in the order to prepare for trial and proceeding under--

THE COURT: Mr. Harrison, you haven't seen these?

MR. HARRISON: No, no, Your Honor, I don't know anything about that. So I'm kind of blindsided about that.

THE COURT: Well, let me give you one copy. I mean, look, I think we can talk about this has to have been orchestrated by Ms. Sullivan because they are all the same.

MS. PERLMUTTER: No, it's through the U.S. Attorney's office.

THE COURT: It's through you?"

Then in the transcript hearing of April 25, 2019, Sullivan informed Judge Seabright that all of her defense, defense strategies, motions, was taken by the Government in the March 21, 2019 search of her home. (See Sullivan's Motion to Dismiss for Prosecutorial Misconduct; Negligence of Government to Supervise Agent; Tampering with Evidence; Violation of Speedy Trial; and Violation of Sullivan's 4th, 5th, 6th, and 14th Amendment Rights Under the United States Constitution filed 08/29/2019). In that hearing Judge Seabright had made comments that Sullivan was trying to control the Court when Sullivan hardly spoke any words in the last three (3) years of the case, and Judge Seabright did not address who he was talking to when he asked the question.

"THE COURT: No, no. I didn't ask you Ms. Sullivan, you've got to understand how a courtroom works.

THE DEFENDANT: I understand. Sorry.

THE COURT: No, no, don't interrupt me.

THE DEFENDANT: Okay, Sorry, Your Honor.

THE COURT: I can see this in you. I saw it before. You don't control the courtroom, I do.

THE DEFENDANT: I understand. I'm sorry.

THE COURT: I don't think you understand that. You better learn it."

On September 6, 2019, on the ride to and from the Court for her first Faretta Hearing with Judge Seabright, Sullivan was approached by a Federal Inmate Aaron Hood ("Aaron"), he told Sullivan the following which she just sat there cause she could not go anywhere shackled in the van. Told Sullivan his name was Aaron Hood, he had a business in Waikiki renting mopeds, and that Katherine Kealoha was set up by Government attorneys both the Assistant Federal District Attorneys and the Hawaii Federal Public Defenders specifically named Alexander Silvert & Peter Wolf. Aaron stated that Alexander Silvert represented him first and wanted him to take a plea deal which was just bad, he would have to go away for over 10 years, so then Peter Wolf represented him after he would not take the deal with Alexander Silvert. Peter Wolf told Aaron that his case and others that were being represented by the Federal Public Defender's office, was attempting to have all of them take deals that the Attorney General's Office wanted them to make their clients take in exchange for not charging Gerard Puana. Aaron stated that Peter Wolf told him to get a private attorney as their office would compromise his case.

On July 19, 2019 government filed Dkt. 195, United States Motion Regarding Defendant's Violation of the Protective Order and Request for Sanctions and Modification, and Dkt. 198 Motion for Revocation of Defendant's Bail, attorney client privilege information was used as an "Exhibit 1" for both Dkts. Sullivan put this on record in the Faretta Hearing with Judge Seabright on 09/11/2019 at 1 p.m. (Dkt. 233; Dkt. 236) and the Bail Revocation Hearing on 09/11/2019 at 1:30 p.m. with Honorable Magistrate Judge Kenneth Mansfield (Dkt. 237). In the hearing with Judge Mansfield, Sullivan put on record the taking of attorney client privilege material and how the government put forth Exhibit 1-2 (Sullivan's Defense Exhibit 14 which had notes between Sullivan and her attorney whether to go forward on Motion to Recuse Judge Chang the strengths and weaknesses) that was altered as part of the privilege material.

TRULINCS 09779122 - SULLIVAN, LEIHINAHINA - Unit: HON-C-A

---

In Exhibits 1-2 attached to Dkt. 198, September 11, 2019, Sullivan stated on record to the Court that those was taken in the search of Sullivan's home on March 21, 2019 as part of her attorney-client privilege information. Judge Mansfield asked for clarification so Sullivan responded by stating and showing Judge Mansfield that it was part of her attorney-client privilege material as "Exhibit 14" for defense motion and on page 1 of Government's "Exhibit 1" there is "Exhibit 14" and then page 2 Government had covered up the attorney-client privilege notes, strategies, strengths, weaknesses of her defense including "Exhibit 14" (which shows that there has been tampering with the Exhibit from the copy provided), therefore, a mispresentation to the Court. Further, Sullivan stated that "Exhibit 14" was part of a Motion to Suppress and Recusal of Judge Chang from signing any search warrant as he was the Judge that was a part of Sullivan's Federally Sealed Qui Tam Claims: 1:09-cv-00342-SOM-KSC U.S. Ex. Rel. Leihinahina Sullivan v. United Healthcare Insurance Company ("UnitedHealthcare") and 1:09-cv-00342-SOM-RLP U.S. Ex. Rel. Leihinahina Sullivan v. Wellcare Health Insurance of Arizona, Inc. dba 'Ohana Health Plan ("Wellcare"), both of which Judge Chang signed motions for this case and had it sealed.

Sullivan put on record that Judge Chang sealed the Qui Tam cases and informed Sullivan that she could not use the information for both cases in her defense for charges that were referred to in Dkt. 198 Pp9 footnote 1 by government. Sullivan explained on record that those charges of unauthorized computer access were the result of information taken out of Med-Quest by her and co-workers while she was the Supervisor of Contracts and Compliance, which preserved information that showed that UnitedHealthcare and Wellcare were billing a capitation payment per month to Med-Quest for individuals who were deceased which cost the Government millions of dollars per month per person. On record, Sullivan stated that Ms. Perlmutter and Macpherson both know that it has nothing to do with credit card fraud or stealing peoples' identities that they are not telling the truth to the Court and that all of this redacting information is to delay giving Sullivan discovery as they took over a million items that they should have never taken by just dumping items into boxes without checking if it was covered under the first warrant, which these items were not.

On record, Sullivan stated that Macpherson and Perlmutter both knows all of Sullivan's defenses as they took all of it and attorney client privilege information in their search of Sullivan's home on March 21, 2019 and that Judge Chang should have never signed off on any warrant because of his involvement with the Qui Tam claims and his ruling had a direct affect on Sullivan's State of Hawaii conviction as she was forbidden to use the Qui Tam cases in her defense that Ms. Perlmutter used in Dkt. 198 Pp 9 footnote 1, of this motion. Sullivan put on the record those individuals assigned to the case were Derrick Watson (then Assistant U.S. District Attorney); Kaulana Young (Investigator); Julius Nutter (Special Agent); Allie Pang (Esq.); Ryan Kaya (Esq.); and Carolyn Nakamura (Special Agent).

Therefore, Sullivan had no choice but to research why there was a confusion between Sullivan and Kealoha by Judge Seabright so she began reading all extrajudicial sources she could get her hands on (i.e. newpapers, articles, YouTube, Facebook, Instagram, etc.) then Sullivan reviewed the actual civil case filed in State Court (which included the Jury Verdict), and all of the Federal filings (motions, hearings, etc.). In Sullivan's review of the records that she could obtained there was only one conclusion she could find in her opinion, there was a miscarriage of justice and Judge Seabright was confusing the two cases as it involved two (2) native Hawaiian women accused of white collar crime, and that both were involved in two Civil Cases which adjudicates them of any wrong doing.

Sullivan could not understand how the civil case that was brought by her Uncle Gerard Puana, could not be used in the criminal case against Kealoha as the jury verdict was very clear in that case that Gerard Puana's mother, Florence Puana, did a reverse mortgage so that Gerard Puana could use the monies to buy back his condo that was foreclosed. That Alison Wong, who works at the Bank of Hawaii Ward, did the notary for the documents on the reverse mortgage (she is a real person). Kealoha's conviction should be overturned because Due Process Clause of the Fourteenth Amendment established a constitutional floor, not a uniformed standard, and this floor required a fair trial in a fair tribunal before a judge who had no actual bias against KEALOHA, Honorable Chief Administrative Judge Seabright ("Judge Seabright") must be recused in both cases.

TRULINCS 09779122 - SULLIVAN, LEIHINAHINA - Unit: HON-C-A

---

FROM: 09779122
SUBJECT: 2. Judge Recusal (FILE)
DATE: 09/15/2019 05:36:31 PM

II. Applicable Statutes

The construction application of 28 U.S.C.A. Section 47 of Judicial code and similar predecessor statutes, disqualifies a judge from hearing or determining appeal from decision of case or issue tried by him, expressed or formed an opinion in the court of the first instance. The Ninth circuit has "stressed the importance of informing Grounds asserted by criminal defendants as to judge's conduct of federal trials held to require his/her disqualification under 455(a) on basis that his impartiality might reasonably be questioned." Under 455(a), the disqualification of any justice, judge, or magistrate of the United States is required in any proceeding in which such a person's impartiality might reasonably be questioned; and under 28 USCS 455(b)(1), such a person's disqualification is required in circumstances where such a person has a personal bias or prejudice concerning a party or personal knowledge of disputed evidentiary facts concerning the proceeding. Also, 28 USCS 144 provides disqualification of a federal district judge upon a party's timely filing and sufficient affidavit that the judge has personal bias or prejudice.

28 U.S.C Section 455.2 Section 455 provides, impertinent part:
(a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might be reasonably questioned.
(b) He shall also disqualify himself in the following circumstances:
(1) Where he has a personal bias or prejudice concerning a party[.]

"[T]he substantive standard is whether a reasonable person with knowledge of the facts would conclude that the judge's impartiality might reasonably be questioned." Pesnell v. Arsenault, 53 F. 3d 1038, 1043 (9th Cir. 2008)(citations, quotations, and alterations omitted). The "reasonable person" is not someone who is "hypersensitive or unduly suspicious," but rather a "well-informed, and thoughtful observer" who "understand[s] all the relevant facts" and "as examined the record and law." United States v. Holland, 519 F. 3d. 909, 914 (9th Cir. 2008)(citations omitted). "The standard must not be so broadly construed that it becomes, in effect, presumptive, so that recusal is mandated upon the merest unsubstantiated suggestion of personal bias or prejudice." Id. at 913 (quotations omitted). the alleged bias "must usually stem from an extrajudicial source." Pesnell 543 F. 3d at 1043.

As the Supreme Court has explained in the context of judicial proceedings:

"First, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. In and of themselves...they cannot possibly show reliance upon an extrajudicial source...Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They may do so if they reveal AN OPINION THAT DERIVES FROM AN EXTRAJUDICIAL SOURCE; and they will do so if they reveal such a high degree of favoritism or antagonism as to make a fair judgment impossible. Litkey v. United States, 510 U.S. 540, 555, 114 S. Ct. 1147, 127 L. ed. 2d 474 (1994).

Judge Seabright repeated violations of the aforementioned statutes and of Canons 3A(6) and 3A(4) violated KEALOHA's Constitutional Rights. Canon 3A(4) prohibition of ex parte communications generally applies to oral discussions about a pending or impending proceeding between judge and another person that not all attorneys of record and defendant(s) in that proceeding are present to hear (in this case "No"), or written communications about such proceeding that less than all attorneys of record have contemporaneously received copies of; decision on disqualification will depend on nature of communication, circumstances under which it was made, that judge did as result of communication, whether it adversely affected the party who has standing to complain (in this case KEALOHA), whether complaining party may have consented to communication being made ex parte (in this case "no"), and if so, whether the judge solicited such consent, whether party who claims to have adversely affected by communication objected in timely manner, and whether party seeking disqualification properly preserved its objection. United States v. Quintanilla (2201, CAAF) 56 MJ 37, 2001 CAAFLEXIS 1256.

III. Judge Seabrights Bias Opinions that Derived from Extrajudicial Sources of KEALOHA's Pretrial, Trial, and Presentencing as Sullivan was Confused for Katherine Kealoha

TRULINCS 09779122 - SULLIVAN, LEIHINAHINA - Unit: HON-C-A

----------------------------------------------------------------------------------------------------

Chief Administrative Judge Seabright concluded that KEALOHA is Alison Lee Wong before trial and during the trial of Katherine KEALOHA and her husband Louis KEALOHA which derived from extrajudicial source and revealed such a high degree of favoritism or antagonism as to make a fair judgment as evidenced from the following eight (8) opinions headings that was written by Judge Seabright before any conviction of KEALOHA.  "Katherine P. Kealoha, also known as Katherine E. Kealoha, also known as Kathy Kealoha, also known as Kat, also known as Alison Lee Wong" (See Cr. No. 17-00582JMS-RLP: 2019 U.S. District LEXIS 22326 [February 11, 2019]; 2019 U.S. District LEXIS 23730 [February 12, 2019]; 2019 U.S. District LEXIS 27586 [February 21, 2019]; 2019 U.S. District LEXIS 28815 [February 21, 2019]; 2019 U.S. District LEXIS 50966 [March 18, 2019]; 2019 U.S. District LEXIS 51673 [March 27, 2019]; and 2019 U.S. District LEXIS 56481 [April 2, 2019].

Alison Lee Wong is real person she works at Bank of Hawaii Ward and notarized the paperwork for Florence Puana reverse mortgage and other pertinent documents to support her son, Gerard Puana as was documented in the Civil Trial where the Escrow documentation (HUD) for the reverse mortgage was put into evidence. This was a disputed fact in the case of KEALOHA and the outcome of that trial, there is a showing that the verdict was affected by that disputed fact.

TRULINCS 09779122 - SULLIVAN, LEIHINAHINA - Unit: HON-C-A

---

FROM: 09779122
SUBJECT: 3. Judge Recusal (FILE)
DATE: 09/15/2019 05:37:02 PM

The information not presented was the Civil Case ("1st Civil Case") involving two (2) key government witnesses, Gerard PUANA ("Son") who mooched off Florence PUANA ("Enabling Mother") in which KEALOHA won. It all began when Son contacted KEALOHA to cosign on a loan for Son's Condo which he failed to pay and foreclosure action was pending in which KEALOHA said no. Then soon after Enabling Mother called KEALOHA crying asking if she could loan her monies to pay for the down payment of the Condo that Son lost in foreclosure, a total of $83,500 as she was going to do a reverse mortgage on her home to pay for Son's debts. KEALOHA reluctantly agreed, but because it was her grandmother she did it. KEALOHA assisted Enabling Mother to help negotiate a rent to own agreement with new owners of Son's foreclosed apartment until Enabling Mother's reverse mortgage got funded. KEALOHA paid escrow the monies to be used as a down payment and monthly rent that was to go towards the rent to own agreement to insure that she would get her monies back from the reverse mortgage. Alison Wong was connected to this civil case as she was the notary from Bank of Hawaii Ward that notarized documents for the reverse mortgage. All of this information kept from the jury, not knowing the culpability of Enabling Mother in the matter.

In the mean time, unbeknownst to KEALOHA or Enabling Mother, Son, who was living in a Aunt's house who had passed, did not move back into the condo, instead Son rented out the condo and pocketed the monies. Intermittently, Son, burglarized a neighbor at the home he was staying in and lied about living with Enabling Mother to the media. When Enabling Mother was confronted with this information by KEALOHA her response was that KEALOHA just take the monies out of the monies from the reverse mortgage. Soon after Son attempted to burglarize KEALOHA's home and stole her mailbox (it was locked) in hopes to intercept the check from escrow that was paying back the monies KEALOHA paid towards Son's condo. All of this information was not brought to jury and resulted in a fundamental miscarriage of justice.

2. Counsel did not Argue Against Enabling Mother's Prerecorded Deposition ("Deposition") that was presented to Juror's when Government Brought A Motion Claiming that she was a key witness and may die so the Judge Granted the Motion Even Though Enabling Mother Lived - Violation of Right to Confrontation and Mistaken Sullivan for Kealoha

In Brady v. Maryland (1963) 373 U.S. 83, 10 L. Ed. 2D 215, 83 S. Ct. 1194, the United States Supreme Court held that under the due process clause of the Federal Constitution's Fourteenth Amendment, the suppression of evidence favorable to an accused, upon request by the accused, violates due process where the evidence is material either to guilt or to punishment, irrespective of the prosecution's good faith or bad faith.

Enabling Mother's deposition, she claimed that she only met with the Assistant U.S. Attorney Michael Wheat ("Attorney Wheat") once for twenty (20) minutes within the two weeks before trial began. In that same deposition Attorney Wheat claimed that he met with Enabling Mother two times for a total of two and half (2 1/2) hours. The right to confront an accuser caused irreversible error as this information was to establish the state of mind of Enabling Mother as Judge Seabright allowed a Medical Physician to dictate that she did not have to appear in person to Court which was a fatal blow to defense. Judge Seabright's appointment of Counsel was shocking to many (present was KEALOHA, Louis KEALOHA, Attorney Rustam Barbee, Derek Wayne Hahn, Attorney Birney B. Bervar, Minh-Hung Nguyen, Attorney Randall Hiranaka, Gordon Shiraishi, and Attorney Lars R. Isaacson) when Counsel went to confront, impeach, refresh Enabling Mother in the recorded deposition she just stood there not knowing what to do so a recess was taken. The truth is Counsel did not do a trial before and during the recess Attorney Rustam Barbee and Attorney Birney B. Bervar attempted to teach, unsuccessful, Counsel, how to confront, impeach, refresh memory and other information for trial lawyers within the recess.

What was evident from the recorded deposition is that Enabling Mother would be able to read information from the U.S. Attorney's office but if any Defense Counsel presented her with information to read she would pretend she could not even thought the font was equal or larger (AUSA coached).

Judge Seabright appointed Counsel, who was not on the list for Federal Attorneys to select, was not qualified to represent KEALOHA, thus ultimately responsible for the violation of KEALOHA's constitutional right to effective counsel. Further, KEALOHA and Attorney Randall K. Hiranaka both objected that Judge Seabright was not going to be at the deposition of a key witness whose prerecorded deposition video was going to be used in the Jury Trial, Judge Seabright did not attend the deposition. Sullivan read this in the newspaper.

3. Judge Seabright Probability of Actual Bias Was to High to Be Constitutionally Tolerable Under Due Process of Law by His Actions, Before, During, and After the Jury Verdict in KEALOHA's Case Due to Extrajudicial Bias of Relying on Media for the

TRULINCS 09779122 - SULLIVAN, LEIHINAHINA - Unit: HON-C-A

---

Media had Non-Stop Coverage of KEALOHA and Her Trial in which Judge Relied on Information from these Extrajudicial Sources from Determination of Matters in the Case and which Sullivan was Confused for KEALOHA

Prior to trial the Media was stating with no doubt that KEALOHA was Alison Wong, with this information Judge Seabright concluded that KEALOHA "Aka Alison Lee Wong" before trial as evident from his opinions prior to verdict in this case, Judge Seabright asked what happened to the $250,000 severance pay from the City and County of Honolulu that was given to KEALOHA's husband in determining if KEALOHA qualified for a Court Appointed Attorney, KEALOHA responded there was no $250,000 and that Judge Seabright's information from the media was incorrect. The media portrayed Florence Puana as "Grandmother" that was taken advantage by KEALOHA when the reality as in the case of the Civil Trial, KEALOHA had loaned monies to Enabling Mother until her monies came in to which she used to pay of mooching Son's bills in the HUD & escrow documents filed in the civil trial, which is not what the media portrayed (extrajudicial bias).

4. Judge Seabright's Ex Parte Communication with Counsel Before Sentencing and Judge Puglisi's Only Two Obtains Given to KEALOHA Either Go Pro Se or Keep Counsel Violated KEALOHA's Constitutional Rights Under the Sixth (6th) and Fourteenth (14th) Amendment Which Sullivan was Mistaken for KEALOHA

KEALOHA's family hired co-counsel Attorney Earl Pardington towards the end of the trial. There was a motion that went before Judge Seabright to allow co-counsel which Counsel was against as she claimed she did not need help. In the hearing for the motion, Judge Seabright did state that Counsel still has feelings and that it hurt her, evidence that there was ex parte communications with Attorney a violation of KEALOHA's Constitutional Rights.

Counsel filed a motion to deem KEALOHA incompetent early in 2019 before trial began in which Judge Puglisi was to decide on. Judge Puglisi's findings was based on physician in which he found KEALOHA competent. At the same hearing KEALOHA did ask for a new attorney in which Judge Puglisi gave her only two (2) choices either she keep Counsel or go pro se, that was it.

5. Judge Seabright's Actions of Not Allowing the First Civil Trial Verdict To Be Introduced and What the Jury Looked at When Deciding that Trial, But Allowing Government to Bring in Evidence to Defend Son Character Including an IRS Agent to Testify that Although Son Collected Rent for Years Without Paying Taxes Was Bias Which Judge Mistaken Sullivan for KEALOHA

Judge SEabright had many of KEALOHA's and Louis KEALOHA's Motions "HELD IN ABEYANCE," saying that he could - not rule until he heard more, then right before trial or during trial he would dismiss it, one of those being the Civil Trial of Son and Enabling Mother. but Judge did allow Government to bring in information supporting a possible character of key witness Son, one such example is the use of an IRS agent to testify that Son had no obligation to pay taxes on rent he received from tenants in the condo he was renting to own in the First Civil Trial. By Judge Seabright allowing evidence for Government to rebut the First Civil Trial but not allowing KEALOHA to introduce the verdict of that trial with jurist findings clearly reveals a deep rooted bias of Judge Seabright which caused the conviction of KEALOHA.

6. Judge Seabright's Action of Not Allowing the Second Civil Suit Brought by Son and Enabling Mom Against KEALOHA for Undisclosed Amount of Monies as Judge Mistaken Sullivan for KEALOHA

Judge Seabright did not allow the Second Civil Suit against KEALOHA by Son and Enabling Mom for an undisclosed amount, the demand letter from Son for one million dollars ($1,000,000), and KEALOHA's Response to the Demand Letter to Ho'oponopono. Son is also suing as part of that Second Civil Suit the City & County of Honolulu (Taxpayers) and the Kevin Sumida who is the Attorney that represented KEALOHA in the first civil suit. Judge Seabright's ruling not to talk about the Second Civil Lawsuit was not only bias but a fatal error to KEALOHA's defense that she was innocent and the motive behind all of these action's was Son's greed who committed the crimes which KEALOHA was found guilty of.

7. Judge Seabright's Should Recuse Himself As His Actions Resulted In a Judgment for AUSA Whose Motives Has Been Revealed Since the Pretrial Incarceration of KEALOHA and SULLIVAN

The Department of Justice "AUSA" represents the United States, and its decision whether to prosecute is relatively autonomous. In KEALOHA's cause after the verdict was handed down the next day she was detained and taken to the Honolulu Federal Detention Center ("FDC") where she is currently. Throughout the trial there has been violations of KEALOHA's constitutional rights which was supported by Judge Seabright's bias actions and inactions that went hand-in-hand with supporting AUSA to win the "Case Against KEALOHA" as the media so eloquently put it.

"When a public official behaves with such casual disregard for his constitutional obligations and the rights of the accused, it erodes the public's trust in our justice system, and chips away at the foundational premises of the rule of law. When such

**TRULINCS 09779122 - SULLIVAN, LEIHINAHINA - Unit: HON-C-A**

---

transgressions are acknowledged yet forgiven by courts, we endorse and invite their repetition." United States v. Olsen, 737 F. 3d 625, 632 (9th Cir. 2013)(Kozinski, C.J., et. al., dissenting from denial of rehearing en banc). United States v. Pederson, 2014 U.S. Dist. LEXIS 106227, *6, 2014 WL 3871197.

Recently, the motive of AUSA going after KEALOHA has come to light, while incarcerated there is a lot of talk by staff and inmates that KEALOHA has been subjected to close monitoring by the FBI, her telephone conversations are reviewed, her email, mail, and video of cellblock where KEALOHA is currently being held. Staff are extra cautious with KEALOHA and highly suspect of the motives of the FBI if she was found guilty, which is correct. SULLIVAN heard through riding the van with others that KEALOHA has been offered a deal in exchange for handing in all information of Mayor Caldwell and the Rail Transit Project which is costing the State of Hawaii and Federal Government billions of dollars in taxpayer funds, and in which the government wants to divert those funds to build the Mexican wall.

Violation of KEALOHA's constitutional rights have been chronologically recorded in the media, whether it is right or wrong. Before, during, and after the "Trials Against Defendant," as covered by Lynn Kawata, whom corresponded and fed the Federal Bureau of Investigation (FBI) and the Assistant United States Attorneys information that was not true. YouTube videos of juror's referring to Florence Puana as "Grandma" the victim of KEALOHA. Florence Puana's live twenty (20) minute interview with Manolo Morales for her hundred (100) year old birthday followed by a party, but unable to do a live witness testimony months before in Federal Court in front of jurors. Then a most recently a claim put in by Gerard Puana to get more monies by attempting to overturn a jury verdict in the civil suit which is in the State of Hawaii Appellate Court of Appeals. The real "victim," has and continues to be Katherine KEALOHA and SULLIVAN as both women has been prejudged by Judge Seabright.

III. Conclusion

Based on the foregoing arguments it is respectfully urged that this Honorable Court to recuse Judge Seabright for violation of SULLIVAN's Fourth, Fifth, and Fourteenth Amendment Rights.

Dated: September 19, 2019
Honolulu, HI
Leihinahina Sullivan, Pro Se Defendant
By: /s/ Leihinahina Sullivan