IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>LEIHINAHINA SULLIVAN,<br><br>Defendant. | CR. NO. 17-00104 JMS-KJM<br><br>ORDER DENYING DEFENDANT'S (1) MOTION FOR A *FRANKS* HEARING, ECF NO. 231; AND (2) MOTION TO SUPPRESS ALL EVIDENCE OBTAINED FROM HER HOME ON JUNE 1, 2016, ECF NO. 232 |

## <u>ORDER DENYING DEFENDANT'S (1) MOTION FOR A *FRANKS* HEARING, ECF NO. 231; AND (2) MOTION TO SUPPRESS ALL EVIDENCE OBTAINED FROM HER HOME ON JUNE 1, 2016, ECF NO. 232</u>

## I.  <u>INTRODUCTION</u>

At issue here are two motions filed by pro se Defendant Leihinahina Sullivan ("Defendant" or "Sullivan"):  (1) a "Motion for a *Frank's* (sic) Hearing," ECF No. 231; and (2) a "Motion to Suppress All Evidence Obtained From her Home on June 1, 2016," ECF No. 232.  For the reasons discussed below, both motions are DENIED.

## II.  <u>BACKGROUND</u>

On May 25, 2016, Magistrate Judge Kevin S.C. Chang ("Judge Chang") issued a search warrant for a search of Sullivan's home in Lihue, Hawaii to seize various items.  *See* ECF No. 357-1 (search warrant) at PageID #3639.  The

warrant was premised on alleged violations of 18 U.S.C. §§ 371, 1028A and 26

U.S.C. § 7206(1) & (2) for "[c]onspiracy to defraud the United States, Involving

the Internal Revenue Service [("IRS")]; Aggravated Identify Theft; Filing False

Tax Return; Aiding and Assisting Filing False Tax Return" (collectively,

"enumerated violations").  *Id.*  This search warrant was supported by an affidavit

by IRS Criminal Investigation Division Special Agent Mark MacPherson ("SA

MacPherson") ("MacPherson Affidavit").[1]  *Id.* at PageID #3640.

Defendant now brings two separate motions raising a series of

arguments.  First, Defendant seeks a hearing pursuant to *Franks v. Delaware*, 438

U.S. 154 (1978), alleging that the Macpherson Affidavit contained false statements

and omitted material facts.  Second, she attacks the validity of the search warrant

on a variety of grounds.[2]

---

[1]  The paragraphs in SA MacPherson's Affidavit appear to be mis-numbered.  The Affidavit goes up to paragraph 47, *see* ECF No. 357-1 at PageID #3672-73, and restarts at paragraph 40 immediately after instead of starting at paragraph 48.  *See id.* at PageID #3673. Accordingly, and to avoid any confusion, the court will reference the page number of the document, the corresponding paragraph on the page, along with the court-generated PageID number when referencing the Affidavit.

[2]  Defendant's motions were filed on September 11, 2019.  ECF Nos. 231, 232.  She filed a supplement to her motion to suppress on November 3, 2019.  ECF No. 317.  The Government filed its opposition to both of the motions on November 22, 2019.  ECF Nos. 357, 360. Defendant filed her replies on November 27, 2019.  ECF Nos. 402, 403.  The court held a hearing on January 6, 2020.

## III. **DISCUSSION**

**A.    Motion for a *Franks* Hearing**

Defendant first seeks a *Franks* hearing, arguing that the MacPherson Affidavit contained false statements and omitted material facts.

"[A] defendant seeking an evidentiary hearing to determine whether a facially valid affidavit contains false statements must make a substantial preliminary showing that: (1) the affidavit contains intentionally or recklessly false statements and (2) the affidavit cannot support a finding of probable cause without the allegedly false information." *United States v. DeLeon*, 979 F.2d 761, 763 (9th Cir. 1992) (citing *Franks*, 438 U.S. at 156). *Franks* also applies to "omissions of material facts." *Id.* (citing *United States v. Stanert*, 762 F.2d 775, 781 (9th Cir. 1985)). Such allegations "cannot be merely conclusory; rather, they must be accompanied by a detailed offer of proof." *United States v. Chesher*, 678 F.2d 1353, 1360 (9th Cir. 1982) (citing *Franks*, 438 U.S. at 171).

Once a defendant has made such a "substantial preliminary showing" and is granted a *Franks* hearing, a *Franks* hearing then requires a district court to engage in a two-part process:

> First, the district court determines whether the affiant officer intentionally or recklessly made false or misleading statements or omissions in support of the warrant. If it finds by a preponderance of the evidence that the officer so acted, the district court then inquires

into whether . . . the affidavit's remaining content is insufficient to establish probable cause.

*United States v. Martinez-Garcia*, 397 F.3d 1205, 1214-15 (9th Cir. 2005)

(citations and quotation signals omitted); *see also United States v. Silva*, 470 F.

Supp. 2d 1202, 1210 (D. Haw. 2006) (same).

### 1. Sullivan's Allegations of False Statements and Material Omissions from SA MacPherson's Affidavit

Defendant alleges the following grounds of misstatements or material omissions in SA MacPherson's Affidavit: (i) the affidavit does not correlate specific IP addresses with the filing of specific tax returns and the deposit of refunds into bank accounts; (ii) there is no "[p]roof [that the] 264 tax returns" were prepared by Sullivan and "false," (iii) there is no "[p]roof of [Sullivan] recruiting and paying others to recruit for Sullivan to prepare [false] tax returns," (iv) the IP addresses 75.85.128.7[1], 98.155.64.26, and 98.150.158.162 identified in the affidavit did not belong to Sullivan; (v) the tax returns of Witness 1[3] were "encumbered by the State of Hawaii via Ryan K. Kaya State of Hawaii Department of Taxation" and "not by Sullivan;"[4] and (vi) a catch-all allegation that all the

---

[3] Defendant refers to Witness 1 by the person's name in her motions. The court refers to this individual as "Witness 1."

[4] In Defendant's motion, "v" was mis-numbered as "vi," with "vi" mis-numbered as "v."

"false and omitted information" led to the issuance of the warrant.[5]  ECF No. 231 at PageID #2025.

In her reply, Sullivan raises the following new grounds:  (vii) the Government has not produced discovery on the "link analysis" between the IP addresses referred to in the MacPherson Affidavit and how they were traced back to Sullivan; (viii) the Government has not produced a letter regarding Witness 1; (ix) the qualifications of SA MacPherson are "speculative" or "pretextual" and do not support his affidavit; and (x) the search warrant failed to include reference to an IRS ID number.[6]  Defendant also appears to request discovery of the tax returns referenced in the search warrant.  *See* Reply, ECF No. 398 at PageID #4115-17.

And at the January 6, 2020 hearing, Sullivan raised two additional new grounds of misstatement relating to the MacPherson Affidavit: (xi) that a Kauai Police Department ("KPD") report referenced in the MacPherson Affidavit was mischaracterized, including the fact that Witness 1 claimed Defendant did not have permission to file tax returns on Witness 1's behalf when, in actuality, Defendant had such permission, and (xii) that the MacPherson Affidavit stated

---

[5]  The court need not address the catch-all allegation separately (or any further), because it addresses and rejects each of the other arguments.

[6]  A device ID number is "a unique number that any machine that actually transmit[s] the tax return is connected to," which "the IRS started tracking" "[s]ince about 2015."  Dec. 11, 2017 Evid. H'rg Tr. at 11:14-18, ECF No. 65 at PageID #530.

Mobile Native Hawaiian Health, Inc. ("MNHH") was a "for profit" organization when in fact it was a non-profit.

### 2. *Analysis*

The court ultimately determines that Defendant has not identified any false statements or material omissions of fact from SA Macpherson's Affidavit. The court addresses each allegation, although not in the order listed above.

*First*, Defendant makes a series of conclusory allegations that certain statements in the MacPherson Affidavit are "false," including the allegations there is no "proof" that Sullivan allegedly prepared approximately 264 tax returns, and such statement is false (ground ii); and that there is no "proof" that Sullivan recruited or conspired with others, and such statement is false (ground iii). Sullivan does not elaborate or explain how such statements were false. And such self-serving conclusory allegations are insufficient to demonstrate a need for a *Franks* hearing. *See United States v. Marcello*, 731 F.2d 1354, 1358 (9th Cir. 1984) ("To mandate an evidentiary hearing, the challenger's attack must be more than conclusory . . . .") (quoting *Franks*, 438 U.S. at 171); *see also United States v. Gonzalez*, 270 F. App'x 702, 703-04 (9th Cir. 2008) (defendant's "conclusory allegations, not supported by an offer of proof, fall short of the showing required for an evidentiary hearing") (citing *United States v. Chavez-Miranda*, 306 F.3d 973, 979 (9th Cir. 2002)).

Moreover, and in fact, these allegedly "false" statements are not false and are corroborated by the MacPherson Affidavit. *See, e.g.,* MacPherson Aff. at 22 ¶ 31 (breaking down where these tax returns were procured from which IP addresses), 10 ¶ 20 (discussing how people associated with Defendant "recruited" individuals on Defendant's behalf), ECF No. 357-1 at PageID #3661, 3649-50. Defendant's bald-faced allegations are an insufficient offer of proof.

*Second*, Defendant makes a series of allegations relating to the IP addresses from which the purportedly fraudulent tax returns were sent. Specifically, she claims that the MacPherson Affidavit does not specify which IP address was used to file specific tax returns or relate to refunds deposited into specific bank accounts (ground i); that certain IP addresses listed did not belong to Defendant (ground iv); and that the warrant failed to include a reference to an IRS device ID number (ground x). Each of these fails. Defendant is mistaken as the Affidavit *does* include which tax returns came from which IP addresses. *See id.* at 22 ¶ 31, ECF No. 357-1 at PageID #3661. Similarly, the fact that certain IP addresses were not registered under Defendant's name is not a misstatement—the Affidavit did not claim that certain IP addresses belonged to Defendant; rather, these IP addresses were *associated* with Defendant. *See id.* at 21 ¶ 29 (noting that a trace through Sullivan's bank accounts identified eight IP addresses), ECF No. 357-1 at PageID #3660. Further, to the extent the MacPherson Affidavit failed to

list an IRS device ID number, any failure to include *additional* information does not negate the probable cause that has already been established, and that the items to be seized were itemized with sufficient particularity. *See infra* § III(B)(1) (discussing the probable cause finding). Nor has Defendant shown how such omission, if included, was material—that is, she has made no showing how the inclusion of this information could have influenced the probable cause determination.

*Third*, Defendant alleges that a number of documents referenced in the search warrant have not been produced in discovery. Specifically, that the Government failed to produce discovery as to how the IP addresses identified in the search warrant relate to Defendant, i.e., the "link analysis" (ground vii); and a letter discussing Witness 1 (ground viii). Defendant also appears to make a new discovery request for all the fraudulently-prepared tax returns referenced in the search warrant. But requests to compel discovery are not allegations of misstatements or material omissions relating to the face of the search warrant, and thus not appropriate for purposes of the court in determining whether a *Franks* hearing is warranted.

*Fourth*, Defendant contests SA MacPherson's description of his qualifications (ground ix). Specifically, she argues that in his Affidavit, SA MacPherson states he conducted "many" investigations, but that the specific

reference to "nine. . . investigations" and "four search and seizure warrants" executed are not "many." *See* ECF No. 398 at PageID #4116. This argument fails because these are not factual misstatements; rather, she disagrees with the characterization of these qualifications as "many." And, more importantly, even if the use of the word "many" constituted a misstatement as to SA MacPherson's qualifications (which it does not), it has no bearing and completely irrelevant as to whether the statements *as to Sullivan* were false and thus lacked probable cause.

*Fifth*, Defendant alleges that the tax returns of Witness 1 were "encumbered by the State of Hawaii via Ryan K. Kaya State of Hawaii Department of Taxation" and "not by Sullivan" (ground v). It appears Defendant is claiming that she did not obtain Witness 1's state tax refunds, which were instead returned to the State of Hawaii. Even assuming this assertion is true, merely because the State of Hawaii (and not Defendant) ultimately obtained a state tax refund does not undermine probable cause as to the other criminal acts alleged against Defendant, including fraudulently preparing tax returns on behalf of Witness 1 (and others).

*Sixth*, at the January 6, 2020 hearing (for the first time), Defendant alleged that there is a misstatement in the Affidavit because MNHH is referred to as a "for profit" organization when, in actuality, it is a non-profit organization (ground xii), and that SA MacPherson mischaracterized the KPD report cited in his Affidavit (ground xi). Both of these new allegations fail. As to the

characterization of MNHH, the Affidavit clearly states that "MNHH was also registered *as a non-profit corporation*, but appears to have been a for-profit tax return preparation business . . . ." MacPherson Aff. at 26 ¶ 35, ECF No. 357-1 at PageID #3665 (emphasis added). Further, to the extent this could be a misstatement (which, it clearly is not), any such allegation is immaterial to the probable cause determination.

As to the KPD report, Defendant claims that the MacPherson Affidavit mischaracterized the contents of the report, although she failed to provide the report for the court's review. More importantly, even taking Defendant's allegation at face value, she has failed to identify any purported mischaracterization. For example, Defendant claims that she had permission to file tax returns for Witness 1, contrary to what the MacPherson Affidavit states, but neither the KPD report nor the MacPherson Affidavit dispute whether she had *authorization* to file tax returns on behalf of Witness 1; rather, it was the *fraudulent contents* on behalf of Witness 1 that is, among other things, the basis for the probable cause finding.

*Last*, Defendant asserts that the MacPherson Affidavit omitted a conversation between an undercover agent and Defendant, where the agent unsuccessfully attempted to solicit Defendant's purported services to prepare a tax

return, and Defendant declined.[7]  *See* ECF No. 232 at PageID #2037-38.

Defendant argues that the conversation shows that the information received from

informants was not corroborated, and accordingly, the search warrant lacked

probable cause.  *Id.*  Defendant is incorrect.  Merely because this singular phone

conversation did not corroborate the reports of others does not mean the

Affidavit's facts were otherwise false or incorrect.  Nor is this omission otherwise

material to the probable cause determination.  *See, e.g.*, *United States v. Norris*,

942 F.3d 902, 910 (9th Cir. 2019) (noting that "materiality" means "necessary to

finding probable cause") (citing *United States v. Perkins,* 850 F.3d 1109, 1116 (9th

Cir. 2017); *see also United States v. Williams*, 477 F.3d 554, 560-61 (8th Cir.

2007) (defendant failed to make substantial preliminary showing justifying a

*Franks* hearing, in part, because the alleged omitted facts "would not have altered

the probable cause determination").

      Accordingly, Defendant has not identified *any* false statements or

material omissions of fact in the MacPherson Affidavit.  Thus, the court need not

discuss in detail the other factors for a *Franks* hearing—including whether

Defendant *also* made the requisite substantial preliminary showing that any

---

[7]  This argument was raised in Defendant's motion to suppress, as opposed to her motion
for a *Franks* hearing.  Nevertheless, because the court liberally construes her argument as
relevant to her request for a *Franks* hearing, the court addresses this argument in its *Franks*
analysis.

statements were "intentionally or recklessly made," or that such statements were "necessary to find probable cause." *United States v. Perdomo*, 800 F.2d 916, 920 (9th Cir. 1986). Given the court's analysis, however, it follows that no false statements or material omissions of facts were "intentionally or recklessly made," and that none of Defendant's allegations could impact the probable cause determination. For the foregoing reasons, the court DENIES Defendant's Motion for a *Franks* hearing, ECF No. 231.

## B. Motion to Suppress All Evidence Obtained from June 1, 2016 Search

Defendant makes several arguments that the search warrant and the subsequent seizures were improper and thus all evidence seized pursuant to this warrant should be suppressed. The court addresses each of these arguments in turn and, for the reasons stated below, finds none has merit.

### 1. SA MacPherson's Affidavit Established Probable Cause for the Issuance of the June 1, 2016 Search

The court first reviews the MacPherson Affidavit to determine whether it established probable cause to search for evidence of the enumerated crimes. For a search warrant to issue, the Fourth Amendment requires that there be "probable cause, supported by Oath or affirmation." U.S. Const. Amend. IV. "[P]robable cause means a fair probability that contraband or evidence is located in a particular place. Whether there is a fair probability depends upon the totality of the circumstances, including reasonable inferences, and is a commonsense,

practical question. Neither certainty nor a preponderance of the evidence is required." *United States v. Kelley*, 482 F.3d 1047, 1050 (9th Cir. 2007) (citation and quotation signals omitted); *see also Illinois v. Gates*, 462 U.S. 213, 238 (1983); *United States v. Gourde*, 440 F.3d 1065, 1069 (9th Cir. 2006) (en banc) ("[P]robable cause means 'fair probability,' not certainty or even a preponderance of the evidence." (citation and quotation signal omitted)). Doubtful cases should be resolved in favor of a warrant. *Kelley*, 482 F.3d at 1050-51.

After careful review, the court concludes that the MacPherson Affidavit established probable cause for three "tax fraud schemes operated" from Defendant's home: (1) Defendant filed false federal tax returns that failed to report her true taxable income; (2) MNHH filed false federal tax returns that failed to report its true gross receipts; and (3) Defendant filed false federal and state tax returns for others. MacPherson Aff. at 4-5, ¶¶ 10(a)-(c), ECF No. 357-1 at PageID #3643-44. The court summarizes the evidence set forth in the MacPherson Affidavit establishing probable cause for each of the alleged schemes, including that evidence of the enumerated offenses would be found at Defendant's home.

Defendant's Tax Returns

For the tax years 2009 through 2014, Defendant signed her individual tax returns as "self-prepared." *Id.* at 5 ¶ 11, ECF No. 357-1 at PageID #3664. The MacPherson Affidavit established, among other things, that Defendant's bank

deposits were in excess of her reported income on these returns, and that she

reported an excessive number of dependents.

For example, gross deposits into Defendant's American Savings Bank

account 3558[8] for 2010 totaled $211,985, while she reported income of $95,557 on

her tax return; gross deposits in 2011 totaled $229,639 while she reported income

of $42,624 on her tax return; gross deposits in 2012 totaled $257,334 while she

reported income of $77,320 on her tax return; gross deposits in 2013 totaled

$211,150 while she reported income of $80,205 on her tax return; and gross

deposits in 2014 totaled $288,599 while she reported income of $85,043 on her tax

return. *Id*. at 19-20 ¶ 25, 23 ¶ 32(a), ECF No. 357-1 at PageID # 3658-59, 3662.

Further, an excess number of dependents that Defendant claimed on her returns,

which reduced her tax liability, changed by year:  9 dependents in 2009; 7

dependents in 2010; 9 dependents in 2011; 10 dependents in 2012; 11 dependents

in 2013; and 12 dependents in 2014. *Id*. at 23 ¶ 32(b), ECF No. 357-1 at PageID

#3662.  For the years 2013 and 2014, Defendant did not report any income from

tax preparation services, although over $130,000 in tax refunds were deposited into

accounts controlled by her during those years. *Id*. at 23 ¶ 32(c), ECF No. 357-1 at

PageID #3662.

---

[8]  Account 3558 was in the name of Defendant and her husband, was opened in 2007, and Defendant has sole authority over the account.  MacPherson Aff. at 17 ¶ 23(a), ECF No. 357-1 at PageID #3656.

## MNHH Tax Returns

Here, the MacPherson Affidavit established that MNHH filed false federal tax returns, that MNHH operated from Defendant's home, and that Defendant was listed as the Secretary/Director of MNHH. *Id*. at 17 ¶ 22(c), ECF No. 357-1 at PageID #3656. MNHH also maintained a business bank account (American Savings Bank account number 4836), opened by Defendant in 2009, and over which Defendant had joint authority. *Id*. at 18 ¶ 23(f), ECF No. 357-1 at PageID #3657.

From 2011 through 2014, MNHH filed annual IRS form 990-N e-postcards, all stating that MNHH's gross receipts were $50,000 or less and listing its address as Defendant's residence. If MNHH reported gross receipts in excess of $50,000, it would have required the filing of an IRS Form 990 or 990EZ—forms that require much more detail. *Id.* at 26 ¶ 35, ECF No. 357-1 at PageID #3665. And, in fact, according to the MacPherson Affidavit, MNHH's gross deposits into American Savings Bank account number 4836 were well in excess of $50,000 in each of these years:  $79,336 in 2011; $236,699 in 2012; $151,385 in 2013; and $236,595 in 2014. *Id*. at 20 ¶ 25(h), ECF No. 357-1 at PageID #3659.

## False Tax Returns for Others

Two witnesses, referred to in the MacPherson Affidavit as Witness 1 and Witness 2, provided information to the KPD and to SA MacPherson directly.

Witness 1 reported, among other things, the following:  Witness 1 paid Defendant a total of $9,136 (by cash and check)[9] for Defendant to prepare four amended tax returns and one original return.  *Id*. 12 ¶ 20(g), ECF No. 357-1 at PageID #3651.

An amended 2010 tax return was false—it lowered Witness 1's income, claimed false business expenses, and forged Witness 1's signature.  *Id*. at 12-13 ¶ 20(h), ECF No. 357-1 at PageID #3651-52.  The amended 2011 tax return was likewise false—it lowered Witness 1's income, claimed an earned income tax credit to which Witness 1 was not entitled, and was also forged.  *Id*. at 13 ¶ 20(i), ECF No. 357-1 at PageID #3652.  Finally, an original 2013 tax return was false—it contained false unreimbursed employee business expenses, child care expenses, and charitable contributions.  *Id*. at 13 ¶ 20(j), ECF No. 357-1 at PageID #3652. Each of these false tax returns caused a loss to the United States treasury.  *Id*. at 12-13, ¶¶ 20(g)-(j), ECF No. 357-1 at PageID #3651-52.  Witness 1's tax return was filed electronically with the IRS using IP address 75.85.128.71.  *Id*. at 21 ¶ 28, ECF No. 357-1 at PageID #3660.  SA MacPherson identified 72 tax returns submitted to the IRS using the same IP address, and 16 of those returns directed refunds into bank accounts controlled by Defendant.  *Id*.

---

[9] Defendant referred to the tax preparation fee as a "donation" and told Witness 1 to make the checks payable to MNHH.  *Id*. at 12 ¶ 20(g), ECF No. 357-1 at PageID #3651.

Witness 2 reported, among other things, the following: Witness 2 paid cash to Defendant to prepare amended tax returns. An amended 2011 tax return was false—it falsely claimed moving and business expenses, and Witness 2's signature on the return was forged. Amended 2012 and 2013 returns were likewise false—they both claimed false medical expenses, charitable contributions, unreimbursed business expenses, and both had the forged signature of Witness 2. *Id*. at 15 ¶ 21(f)-(g), ECF No. 357-1 at PageID #3654. Each of these tax returns caused a loss to the United States treasury. *Id*.

Further, the MacPherson Affidavit established that 48 tax returns, using eight different IP addresses, directed that refunds be deposited into bank accounts controlled by Defendant. *Id*. at 21 ¶ 29, ECF No. 357-1 at Page ID #3660. One of those IP addresses, 204.210.111.244, was subscribed to by Defendant at her home address. *Id*. at 30 ¶ 41, ECF No. 357-1 at PageID #3669. From February 17, 2016 through April 20, 2016, 48 tax returns were submitted to the IRS using this IP address. *Id*. at 30 ¶ 42, ECF No. 357-1 at PageID #3669.

Based on these facts and others, and given the "totality of the circumstances" in the MacPherson Affidavit, it established a fair probability that Defendant's residence (i.e., "SUBJECT PREMISE") contained evidence of the enumerated violations from the three tax related schemes. Accordingly, there was ample basis for Judge Chang to make the probable cause determination.

## 2. *The Search Warrant Was Not Overbroad*

Defendant argues the MacPherson Affidavit was overbroad because it sought "contextual information necessary to understand other evidence," which, Defendant argues, made the scope of the warrant "limitless."  ECF No. 232 at PageID #2039-40.  Defendant is mistaken and takes such phrasing out of context.  Contrary to Defendant's assertion, read in context, this language does not permit an overbroad search.  *See* MacPherson Aff. at 34-37 ¶ 41, ECF No. 357-1 at PageID #3673-76.  Instead, this language is contained in a specific sub-paragraph in context of a search protocol for electronic files.  The entire sub-paragraph is as follows:

> d) The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a digital device or other electronic storage media that are necessary to draw an accurate conclusion is a dynamic process.  While it is possible to specify in advance the records to be sought, digital evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves.  Therefore, *contextual information necessary to understand other evidence also falls within the scope of the warrant.*

*Id.* at 37 ¶ 41(d), ECF No. 357-1 at PageID #3676 (emphasis added).  Accordingly, it is clear that the "contextual information" needed was not limitless, as Defendant claims, but rather applies to "information stored on the computer and the

application of knowledge about how a computer behaves" in order to review, identify, or process the relevant digital data. *See, e.g.*, *United States v. Loera*, 59 F. Supp. 3d 1089, 1154 (D.N.M. 2014) (finding the phrase "contextual information" when read in context to be sufficiently particular and not overbroad). Defendant has failed to identify that the scope of the warrant was overly broad.[10]

### 3. *Other Arguments*

Defendant makes several other arguments, which the court now addresses.

#### a. *Seizures Were not Outside the Scope of the Warrant*

Defendant argues that the seizures from the June 1, 2016 search were beyond the scope of the warrant, in that "[a]gents came in and just started dumping items into boxes without reviewing if it was covered under the 1st warrant. They had time to review items but instead began taking brand new boxes (never used) out of Sullivan's shed, and began dumping whatever paperwork, pictures, and other items they found into those boxes." ECF No. 232 at PageID #2029. Because

---

[10] Further, the listed items to be seized were within the scope of the search warrant, and were described with sufficient particularity and limited by a specific time frame (January 2009-present). *See generally* ECF No. 357-1 at PageID #3684-86. The list included four broad categories: (i) documents relating to Defendant's finances, including items showing income received from preparing taxes; (ii) items to show ownership, operation, and finances of MNHH, including tax-related matters; (iii) items establishing the preparation of state and federal taxes, a tax preparation business, and receipt of refunds; and (iv) items relating to tax clients. All of these categories relate to the enumerated violations and are supported by probable cause.

of the alleged impermissible seizures, Defendant seeks an evidentiary hearing as to whether all evidence should be suppressed.

In her motion, Defendant alleges in a conclusory fashion that the Government has seized many items, including documents such as medical records, living wills and trusts, preschool applications, and much more. *See* ECF No. 232 at PageID #2033. But other than these conclusory allegations set forth in a memorandum, Defendant has offered no actual proof—such as an inventory provided by the Government or even a declaration by her—that the Government in fact seized such files. Accordingly, Defendant has not provided any *actual proof* that the Government has seized documents outside the scope of the search warrant, and thus, she is not entitled to an evidentiary hearing on this issue.[11] *United States v. Ledesma*, 499 F.2d 36, 39 (9th Cir. 1974) (moving papers must be "sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question" for an

---

[11] Defendant also seeks the suppression of *all* evidence seized from the June 1, 2016 search. *See* ECF No. 232 at 2033-34. Such request is an "extraordinary remedy [which] should be used only when the violations of the warrant's requirements are so extreme that the search is essentially transformed into an impermissible general search" and in "cases where there is a 'flagrant disregard' for the terms of the warrant." *United States v. Chen*, 979 F.2d 714, 717 (9th Cir. 1992). Otherwise, "[o]rdinarily, only evidence that is obtained in violation of a warrant is suppressed." *Id.* (*citing United States v. Tamura*, 694 F.2d 591, 597 (9th Cir. 1982). Here, Defendant has not provided actual proof that *any* evidence that has been improperly seized, much less shown that the Government "flagrant[ly] disregard[ed]" the search warrant justifying wholesale suppression. If, later on, Defendant identifies *specific items*, arguing such items should be suppressed, the court will consider such a request at that time, if appropriate.

evidentiary hearing) (citing *Cohen v. United States*, 378 F.2d 751, 760-61 (9th Cir.), *cert denied*, 389 U.S. 897 (1967)).

> b.    *Judge Chang's Purported Bias When Issuing the Warrant*

Defendant asserts that the search warrant issued by Judge Chang was improper due to bias because he was the magistrate judge in an unrelated *qui tam* matter against her and should have recused himself.  This is identical to another argument addressed in Sullivan's other motion.  *See* ECF No. 293.  And as discussed in a separate order denying Defendant's "Motion to Squash/Suppress All Warrants Signed by Judge Kevin S. Chang Violation of Sullivan's Due Process," filed on January 6, 2020, *see* ECF No. 549, Defendant has failed to show any purported bias from Judge Chang or that Judge Chang should have otherwise recused himself.

> c.    *Agent's Purported Interrogation of Sullivan's Son*

Sullivan alleges that in execution of the search warrant, an agent named "Derek" took her son aside and "interrogated him for passcodes, and other information regarding iPhones & iPads, and where did [Sullivan] put stuff."  ECF No. 232 at PageID #2031.  During this time, her son was "not free to leave and the request for [her son] to be with one of the parents was denied."  *Id.*

To the extent such alleged actions (if true) amounted to any constitutional violations as against her son, Defendant has no standing to make

such an assertion for any purported violations of *his* constitutional rights. *See e.g.,*
*Jackson v. Official Representatives and Emps. of L.A. Dep't.*, 487 F.2d 885, 886
(9th Cir. 1973) (per curiam) (litigant had no standing to allege that the search of his
parents' home was illegal in his own § 1983 suit regarding his arrest and
conviction); *see also Ramirez v. United States*, 294 F.2d 277, 281 (9th Cir. 1961)
(noting appellant did not have standing to complain of the arrest of his wife or the
search and seizure incident thereto), *disapproved on unrelated grounds by United*
*States v. Demma*, 523 F.2d 981 (9th Cir. 1975).[12]

Defendant has failed to show that any evidence should be suppressed,
or that the search warrant was otherwise invalid.[13]  Accordingly, her Motion to
Suppress All Evidence Obtained from her Home on June 1, 2016, ECF No. 232, is
DENIED.

---

[12]  At most, construing Defendant's allegations liberally, obtaining the passcodes from
her son in an improper manner could possibly constitute misconduct.  The court considered this
claim separately as part of Defendant's various motions to dismiss for prosecutorial misconduct
heard on January 23, 2020.  *See* ECF Nos. 295, 223 & 306.  There, Defendant was given the
opportunity to have her son brought to court to testify, but ultimately, her son was not called as a
witness.  Thus, the court was left with Defendant's bare assertion of fact, an insufficient basis to
find any misconduct.  *See* ECF No. 606.

[13]  Defendant makes two more arguments in her motion to suppress—that SA
MacPherson was not qualified and that the warrant only identified one IP address registered
under her name, so the seizure of other computers was impermissible.  These arguments fail in
her motion to suppress for the same reasons they failed in relation to her *Franks* motion.  *See*
*supra* § III(A)(2) (discussing SA MacPherson's qualifications are immaterial to probable cause
determination); *see also id.* § III(B)(2) (discussing probable cause, including various bank
accounts traced to multiple IP addresses *associated* with Defendant).

## IV.  **CONCLUSION**

Based on the foregoing, the court DENIES Sullivan's (1) "Motion for

a *Frank's* (sic) Hearing," ECF No. 231; and (2) "Motion to Suppress All Evidence

Obtained from her Home on June 1, 2016," ECF No. 232.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, January 24, 2020.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*United States v. Sullivan*, Cr. No. 17-00104 JMS-KJM, Order Denying Defendant's (1) Motion
for a *Franks* Hearing, ECF No. 231; and (2) Motion to Suppress All Evidence Obtained from her
Home on June 1, 216, ECF No. 232