IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR. NO. 17-00104 JMS-KJM |
| Plaintiff, | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTIONS ALLEGING VIOLATIONS OF THE ATTORNEY-CLIENT PRIVILEGE, ECF NOS. 345, 667 & 670 |
| vs. | |
| LEIHINAHINA SULLIVAN, | |
| Defendant. | |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTIONS ALLEGING VIOLATIONS OF THE ATTORNEY-CLIENT PRIVILEGE, ECF NOS. 345, 667 & 670

## I. INTRODUCTION

Before the court are pro se Defendant Leihinahina Sullivan's ("Defendant" or "Sullivan") "Motion to Dismiss Based on Violation of Attorney Client Privilege Communication," ECF No. 345; "Motion for Leave to File This Motion in Limine to Exclude All Evidence Derived From All 'Native' Files," ECF No. 667; and "Motion for Leave to File This Motion in Limine Because Non-Discoverable Attorney-Client Priviledge (sic) & Defense Work Product Information was Unconstitutionally Disclosed on Discoverable Disc 13, 16, 18, 22," ECF No. 670. Defendant argues, among other things, that the United States

seized various documents protected by the attorney-client relationship and that this intrusion violated her Sixth and Fourteenth Amendment[1] rights.

Essentially, Defendant's arguments turn on the allegedly deficient "taint team" process[2] implemented by the United States in relation to the execution of two search warrants. As discussed below, although the court finds that the taint team process was clearly lacking, resulting in a small number of privileged documents being disclosed by the taint team to the prosecution team, this lapse does not amount to any violation of Defendant's constitutional rights and does not warrant the ultimate sanction sought by Sullivan—dismissal of the Fourth Superseding Indictment ("FSI"). The court does find, however, that a lesser sanction is both appropriate and necessary. Accordingly, the motions are GRANTED to the extent Defendant seeks to suppress all the "HEIC" files obtained from the seizure and search of Defendant's iCloud account records, but the motions are otherwise DENIED.

---

[1] The court liberally construes Sullivan's Fourteenth Amendment due process claim as one brought under the Fifth Amendment.

[2] As described in more detail below, a "taint team," sometimes called a "filter team," consists of individuals from an investigating agency (in this case, the Internal Revenue Service Criminal Investigation Division ("IRS-CI")) and the United States Attorney's Office, who are walled off from the "prosecution team." The taint team is responsible for reviewing seized documents for potentially privileged material, and thus insuring that the prosecution team is not provided with any privileged material. *See, e.g.*, *In re Grand Jury Subpoena, JK-15-029*, 828 F.3d 1083, 1087 (9th Cir. 2016).

## II.  BACKGROUND

Defendant raises two claims related to the taint team process employed by the United States during the execution of two separate search warrants.  First, she claims that the United States seized privileged documents, which she labeled in a folder titled "Lexus Nexus," and these documents were listed on an inventory of seized items as non-privileged documents.  Second, Defendant alleges that the United States seized images that included photographs of defense strategy boards protected under the attorney-client privilege and/or the work-product doctrine.  The court describes the background to each allegation as follows.

### A.  "Lexus Nexus" Documents[3]

On March 21, 2019, the United States executed a search warrant on Defendant's residence.  *See* ECF No. 625-1 at PageID #7134 (Rogers Aff. ¶ 3).  Defendant then filed a November 19, 2019 "Motion to Dismiss Based on Violation of Attorney Client Privilege Communication," ECF No. 345, making various

---

[3]  The inventory label states "Lexus Nexus docs.," which appears misspelled.  It is undisputed for the purposes here that this was a reference to "LexisNexis," a company providing legal research tools, cases, and legal news, among other things.

claims that the agents violated her attorney-client privilege during the execution of the warrant.[4]

A hearing was held on January 23, 2020. IRS-CI Special Agent Mark Macpherson ("SA MacPherson"), the lead agent overseeing the investigation, was asked about the search's inventory list that included a reference to the seizure of "Lexus Nexus docs," which Defendant claims were protected by an attorney-client or work-product privilege. SA MacPherson was unable to recall the contents of the "Lexus Nexus" documents.

Based on the uncertainty of the status of the "Lexus Nexus" documents, on January 24, 2020, the court ordered the United States to produce the purported "Lexus Nexus" documents for an in-camera review. ECF No. 610. Although the United States provided other seized documents, it could not locate any "Lexus Nexus" documents as listed on the inventory. ECF No. 611; *see also* ECF No. 614 (sealed). This response then led to further briefing and a March 4, 2020 evidentiary hearing.

---

[4] The original indictment against Sullivan was returned by the grand jury on February 15, 2017. ECF No. 1. Prior to the execution of the March 21, 2019 search warrant, Sullivan had been represented by privately-retained counsel William Harrison, followed by Assistant Federal Public Defender Craig Jerome. At the time the warrant was executed, Sullivan was represented by Criminal Justice Act counsel Megan Kau. She is now pro se.

The discovery that the United States possessed no "Lexus Nexus" documents then prompted further briefing and a March 4, 2020 continued evidentiary hearing. The following evidence was adduced from various declarations and the January 23 and March 4 evidentiary hearings.

Because Defendant was represented by counsel in the ongoing prosecution against her when the search was executed, the United States initiated a "taint team" process to preclude privileged or potentially privileged materials (under either the attorney-client privilege or work-product doctrine) from reaching the "prosecution team" (i.e., the agents and the prosecutors assigned to the actual investigation and prosecution of Defendant). Accordingly, the United States created a "taint team," consisting of agents, Assistant United States Attorneys ("AUSAs"), and paralegals, who were "walled off" and separated from the prosecution team.[5]

Two taint team agents were on site at Defendant's residence to conduct an initial taint review of all seized materials—IRS-CI Special Agents Clement Rogers ("SA Rogers") and Mark Pahnke ("SA Pahnke"). During the

---

[5] The use of this specific "taint team" process was set forth in the affidavit in support of the search warrant and approved by a United States magistrate judge. *See* Mag. No. 19-00267 RT, ECF No. 1 at PageID #19.

January 23, 2020 hearing, SA MacPherson[6] explained that the taint team agents were tasked with sorting and placing the seized material into three boxes: a "white box," which contained materials that were clearly not privileged; a "gray box," which contained materials that were questionable as to whether they were privileged; and a "black box," which contained materials that were clearly privileged. ECF No. 637 at PageID #7271-72.[7]

SA Rogers collected and sorted various material, including documents placed into a "white box" evidence bag titled "Control #6."[8] ECF No. 625-1 at PageID #7135. He handwrote "a general description of the items in [evidence bag] control #6," to include "lexus nexus" docs. *Id.* at PageID #7135. He then provided the unsealed Control #6 bag to SA Pahnke, who

> ensur[ed] that each item was responsive to [the list of items to be seized] and . . . determine[d] if there were any items that could potentially be protected by attorney-client privilege. If [he] determined that there were any non-responsive items or items that could be potentially protected by attorney-client privilege, then [SA Pahnke] removed those items from the unsealed bag before

---

[6] To be clear, SA MacPherson was part of the prosecution team and oversaw the March 21, 2019 execution of the search warrant. However, SA MacPherson stood outside the premises the entire time the taint agents were reviewing documents and was not a part of the search team inside the house. *See* ECF No. 637 at PageID #7194-95.

[7] Members of the taint team were provided a specific "Filter Team Instruction." *See e.g.*, ECF No. 693-1.

[8] The inventory is broken down into separate "Control" numbers. "Control #6" lists the contents of its envelope as: "State tax Docs., Lexis Nexus Docs., 10 copies, W-2, and College Docs." ECF No. 614-1 at PageID #6865.

> officially sealing the bag.  [He] would [then] initial the
> hand written (sic) tag.

ECF No. 625-2 at PageID #7139.  SA Pahnke had no "specific memory of

reviewing items resembling 'lexus nexus' documents in control #6."  *Id.* at PageID

#7140.

　　　After SA Pahnke sealed the bags containing "responsive documents

and non-privileged information, including items in control #6," he "provided and

transferred [evidence bag Control #6] to the custody and control of . . . [SA] Mark

MacPherson.  Any items that were identified to contain potentially privileged

information (i.e., "gray box" material) were sealed and sent to Portland, Oregon,

and were not given to [SA] MacPherson."  *Id.*  Items determined to be privileged

(i.e., "black box" material) were left at Defendant's residence.  *Id.*

　　　SA MacPherson explained that upon receiving the non-privileged

"white box" documents,[9] including evidence bag Control #6,[10] he unsealed the bag,

---

[9]  There was inconsistent testimony as to when SA MacPherson received the non-privileged documents.  At the January 23, 2020 hearing, SA MacPherson testified that the non-privileged documents were mailed to him on Oahu.  ECF No. 637 at PageID #7624.  At the continued March 4, 2020 hearing, he testified that upon having his recollection refreshed by SA Pahnke, he recalled receiving the non-privileged documents (including control item # 6) in Kauai immediately after the search was conducted, which he kept secured in his hotel room, until he brought the documents back to Oahu for processing.  ECF No. 738 at PageID #7980-82, 7992.  Although this discrepancy is not particularly relevant to the court's analysis, the court finds the March 4, 2020 explanation to be credible.

[10]  SA MacPherson also testified that he received three other "white" box evidence bags—Control Numbers 1, 7, and 8.  ECF No. 738 at PageID #7982.  The contents of these bags are not at issue.

scanned each document, and forwarded these scanned copies to the prosecution team. ECF No. 738 at PageID #7982. He further testified that although he reviewed the description of each bag generally, e.g., to determine if a thumb-drive listed as being in the bag was actually in the bag, he did not specifically check the contents of a particular envelope against the inventory listed for that envelope. *Id.* at PageID #7994-95. SA MacPherson further testified he did not recall coming across any documents that may be considered "Lexus Nexus" documents. *Id.* at PageID #7985-86.

Once he scanned and reviewed the contents of Control #6, SA MacPherson placed the bag and its contents in a locked room within the IRS offices in the federal building. *See id.* at PageID #8004. The bag and its contents stayed in this secure room until the court requested an in-camera review. SA MacPherson testified that he did not remove, destroy or alter any documents in the control envelopes, including Control #6. *Id.* In other words, although SA MacPherson cannot explain where the "Lexus Nexus" documents are, he testified that under the procedures he used, no documents that could be described as "Lexus Nexus" were in Control #6 when he received it. Based on SA MacPherson's manner of testifying, demeanor, and memory of events, the court finds this testimony to be fully credible.

On January 31, 2020, the United States submitted two declarations—one from SA Rogers and one from SA Panhke. *See* ECF Nos. 625-1 & 625-2. Essentially, both agents attested to the taint procedure itself, but could not answer (i) exactly what was contained in the documents labeled "Lexus Nexus;" and (ii) the whereabouts of these documents. Accordingly, the court requested the United States to conduct a search of all privileged and non-privileged documents in an attempt to locate any documents that may potentially be "Lexus Nexus." *See* ECF No. 638. The United States conducted its review of the non-privileged (by the prosecutorial team) and privileged materials (by the taint team), which did not reveal any documents that may have been "Lexus Nexus" documents. ECF No. 656.

During the March 4, 2020 hearing, Defendant testified as to the contents of the "Lexus Nexus" folder in her home. She testified that she created a folder named "Lexus Nexus," which included her research notes and notes regarding discussions she had with her former attorney, William Harrison. ECF No. 738 at PageID #8008-09. She testified that she created the folder after the first search warrant was executed in June 1, 2016, and that this file was still in her home as of March 19, 2019, but was no longer there as of March 24, 2019, after the March 21, 2019 search. *Id.*

**B.      Defendant's Four Strategy Boards**

On April 26, 2019, pursuant to a search warrant, a copy of Defendant's iCloud account was produced from Apple, Inc. to the United States. In a November 19, 2019 motion, Defendant alleged that the prosecution team was provided with privileged material from this iCloud search.  In support of that motion, she attached a litany of documents, including three unredacted photographs of defense strategy boards relating to her pending case.  *See generally* ECF No. 345-1; *see also id.* at PageID #3240-42.  As discussed below, the United States now concedes that the strategy boards are privileged.

In its response to the November 19 motion, the United States took the position that "until the [D]efendant herself disclosed [the strategy boards and other documents] to the public writ large" that "the prosecution team had not seen the vast majority of the materials contained" in the exhibit.  ECF No. 471 at PageID #5067.  The United States surmised that Defendant may have "received copies of her own iCloud materials through independent means, i.e., from her family members" and that "[h]er receipt of documents through those avenues has no bearing on how the United States conducted its search and seizures or how it conducted discovery."  *Id.*  The United States reasserted this position during the January 23, 2020 hearing—that Defendant procured these privileged documents independently, and thus the prosecution team had no knowledge of these

documents outside of Defendant's own disclosure.  *See* ECF No. 637 at PageID #7202-03.

In the interim, Defendant continued to review discovery.[11]  And on February 18, 2020, after completing that review, Defendant filed two motions for leave to file motions alleging, among other things,[12] a violation of the attorney-client privilege.  ECF Nos. 667 and 670.  Specifically, Defendant was able to identify four images containing her defense strategy boards that were possessed by *the prosecution team* (three of these four images were previously attached to her November 19 motion at ECF No. 345-1 at PageID #3240-42).  *See* ECF No. 708. In other words, what Defendant was unable to prove in her November 19 motion— that the defense strategy boards were possessed by the prosecution team—she was able to prove after her continued discovery review.

---

[11]  Defendant was having difficulty opening files on certain electronic discovery discs at Honolulu's Federal Detention Center.  In order to provide Defendant with needed assistance, the court obtained certain discs from Defendant's stand-by counsel, had those discs downloaded on a laptop by the court's IT staff, and then permitted Defendant to review that discovery from the cellblock in the courthouse.  *See, e.g.,* ECF Nos. 638, 640, 647, 651, 663, and 674.

[12]  These other issues were addressed separately by the court—ECF No. 667 was denied in part, noting that "[i]ssues not resolved by this [March 4, 2020 electronic order] will be addressed by separate order following a March 4, 2020 hearing."  ECF No. 702.

These new motions then prompted further briefing[13] and the March 4, 2020 evidentiary hearing.  The following evidence was adduced from declarations and the March 4 evidentiary hearing.

SA MacPherson "coordinated the delivery of [the] hard drive containing Apple's response to the iCloud search warrant to IRS-CI Computer Investigative Specialist Mike Hammond ["CIS Hammond"]."  ECF No. 693-2 at PageID #7742.  SA MacPherson did not otherwise receive the hard drive, as it was "sent directly from Apple to CIS Hammond."  *Id.*  Similar to the search of Defendant's home in March 2019, because the United States was aware that Defendant was represented by counsel, the United States utilized a taint team to review the iCloud production.[14]

CIS Hammond and IRS-CI Special Agent Clint Kindred ("SA Kindred") were on the taint team charged with reviewing the iCloud account production for privileged materials.  *Id.*  CIS Hammond conducted various keyword searches for documents that may contain the names of Defendant's prior

---

[13]  The United States filed its response to ECF Nos. 667 and 670 on February 28, 2020. ECF No. 693.  The parties submitted supplemental briefing after the March 4 hearing.  ECF Nos. 739 (the United States) and 748, 754, 756 (Defendant).  Defendant filed ECF Nos. 748, 754, and 756 as separate motions for leave, which the court construed as Replies and considers for purposes of this Order.  *See* ECF No. 760.

[14]  And similarly, the use of the taint team process for the iCloud production was reviewed and approved by a neutral United States magistrate judge.  *See* Mag. No. 19-00374 KJM, EFC No. 1 at PageID #25-26.

counsel.  ECF No. 693 at PageID #7717.  Responsive and non-privileged materials were provided to SA MacPherson, who subsequently turned these documents over to the prosecution team.  ECF No. 693-2 at PageID #7742-43.

Documents that were potentially privileged (i.e., contained the names of Defendant's prior counsel in their text), along with all images, were sent to SA Kindred for review.  ECF No. 693-3 at PageID #7747.  The image files he received included HEIC files,[15] JPEG files, JPG files, and PNG files.  *Id.* at PageID #7748. He opened and reviewed each JPEG, JPG, and PNG file.  *Id.*  SA Kindred explained the extent of his work on the HEIC files: "[t]he HEIC files require downloading and installing additional codecs to work with those files, which we cannot do on our government computers.  As such, they were not viewable by me and so I was unable to see or review the contents of those files."  *Id.* at PageID #7748.

SA Kindred also reviewed an "Apple iCloud (Backup)_2019-06-28_Report.pdf" ("iCloud Extract Report") created by CIS Hammond.  *Id*. at PageID #7749.  That report contained thumbnail images of the HEIC files.  Per SA Kindred:

---

[15]  A ".heic" file "contains one or more images saved in High Efficiency Image Format (HEIF), a file format commonly used to store photos on mobile devices."  ECF No. 693-5 at PageID #7758.

> I could not determine if potentially privileged information was
> contained in the thumbnail images in that report because they
> were too small to be pixelated. I also reviewed the file in the
> folder titled "thumbnails" which contained small images that
> also were too small and pixelated to be legible. Therefore, the
> images were unintelligible and revealed no potentially
> privileged information.

*Id.* Approximately 100 MB of potentially privileged material was sent to a taint

team AUSA for further review. *Id.* SA Kindred then "cleared" the remaining

items, including the HEIC files that he could not open or view, and provided them

directly to the prosecution team. *Id.*

On February 21, 2020, in response to Defendant's motion, AUSA

Michael Albanese (who is not part of the prosecution team) was assigned to

conduct a further review of the documents, including the HEIC files, that

Defendant alleged were privileged and possessed by the prosecution team. ECF

No. 693-5. After conducting his review, AUSA Albanese concluded that four

HEIC files—Defendant's "strategy boards" (contained on discovery disc 18 at

#1620, #1623, #1625, and #1627)—were in fact privileged but nonetheless

provided to the prosecution team. *Id.* at PageID #7758, 7760. According to

AUSA Albanese, these four documents were not legible in thumbnail view in the

iCloud Extract Report, and that "[f]iles in .heic format cannot be opened on the

current configuration of computers used by employees at the United States

Attorney's Office for the District of Hawaii, which run a 2015 edition of Windows

10.  According to Microsoft.com, the software needed to open .heic files was released in January 2018." *Id.* at PageID #7758.

Only after consulting with the Department of Justice's IT staff was AUSA Albanese able to devise a "work-around" solution to open the files—emailing the HEIC files to an Apple iPhone, and then opening the files on that phone. *Id.* at PageID #7759-60. Upon opening the HEIC strategy board files identified by Defendant in her motion, AUSA Albanese was then able to confirm that these images were "privileged." *Id.* at PageID #7760. Members of the prosecution team, other than viewing Defendant's own publicly-filed exhibits (as discussed further below), have not viewed the HEIC images of the four strategy boards. *See* ECF No. 693-4 at PageID #7752-53 (Declaration of prosecution paralegal); ECF No. 693-6 at PageID #7764 (Declaration of AUSA Perlmutter); ECF No. 693-8 at PageID #7769 (Declaration of AUSA Khatib); ECF No. 693-2 at PageID #7744 (Declaration of SA MacPherson).[16]

---

[16] When Defendant was given access to discovery on a laptop provided by the court (see footnote 11), that laptop contained the software required to open an HEIC file on a windows device. This explains why Defendant was able to view the full image of the strategy boards, while SA Kindred and AUSA Albanese could not (at least without a software update or a "work-around").

Given this somewhat tortured history, the court now considers three

separate motions,[17] making redundant and overlapping arguments.  The remedies

Defendant seeks include dismissal of the FSI (ECF No. 345), to exclude "all

evidence" derived from "Native Files" (ECF No. 667), and to

"suppress[] . . . *all* evidence" (ECF No. 670).  At the hearing and in her

supplemental briefing, Defendant clarified that the specific remedy she seeks is the

suppression of all evidence obtained through the iCloud search warrant.  *See* ECF

Nos. 731 & 733.

## III.  LEGAL STANDARDS

**A.     The Attorney-Client Privilege and Work-Product Doctrine**

As stated by the Supreme Court:

> We readily acknowledge the importance of the attorney-
> client privilege, which is one of the oldest recognized privileges
> for confidential communications.  By assuring confidentiality,
> the privilege encourages clients to make full and frank
> disclosures to their attorneys, who are then better able to
> provide candid advice and effective representation.  This, in
> turn, serves broader public interests in the observance of law
> and administration of justice.

*Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 108, (2009) (internal citations

and quotation marks omitted).

---

[17]  Defendant filed a fourth motion relating to the alleged violation of her attorney-client privilege.  *See* ECF No. 668.  This motion was denied in its entirety by a separate order.  ECF No. 701.

An intrusion by the government into an attorney-client relationship in order to obtain confidential information may be deemed a violation of a defendant's Sixth Amendment right to effective assistance of counsel. *See Nordstrom v. Ryan*, 762 F.3d 903, 910 (9th Cir. 2014) ("When the government deliberately interferes with the confidential relationship between a criminal defendant and defense counsel, that interference violates the Sixth Amendment right to counsel if it substantially prejudices the criminal defendant.") (citing *Williams v. Woodford*, 384 F.3d 567, 584-85 (9th Cir. 2004) and *United States v. Irwin*, 612 F.2d 1182, 1186-87 (9th Cir. 1980)).  In such situations, a court may suppress evidence gathered as a result of the communication or, in egregious cases where the prejudice cannot otherwise be cured, dismiss the indictment. *See United States v. Haynes,* 216 F.3d 789, 796 (9th Cir. 2000), *cert. denied,* 531 U.S. 1078 (2001); *United States v. Marshank,* 777 F. Supp. 1507, 1521-22 (N.D. Cal. 1991). *See also United States v. Morrison*, 449 U.S. 361, 364 (1981) ("Sixth Amendment deprivations are subject to the general rule that remedies should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests.").

Relatedly, the work-product doctrine covers documents or materials prepared by an attorney or an attorney's agent in preparation for litigation and protects such documents or materials from discovery. *See United States v.*

*Nobles,* 422 U.S. 225, 238-39 (1975). This doctrine is essential to the attorney-client relationship because attorneys must "work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." *Hickman v. Taylor*, 329 U.S. 495, 510 (1947). "Proper preparation of a client's case demands that [a lawyer] assemble information, sift what he considers to be relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference." *Id.* at 511. Together, "the attorney-client privilege and the work-product doctrine jointly support the Sixth Amendment's guarantee of effective assistance of counsel." *In re Search Warrant Issued June 13, 2019*, 942 F.3d 159, 174 (4th Cir. 2019).

**B.      The Court's Inherent Supervisory Power Under the Fifth Amendment**

A federal court may also exercise its inherent supervisory powers to dismiss an indictment when outrageous government conduct violates "a recognized statutory or constitutional right." *United States v. Chapman*, 524 F.3d 1073, 1085 (9th Cir. 2008). And under this rubric, a court may dismiss an indictment on the ground of outrageous government conduct where the conduct amounts to a due process violation. *United States v. Barrera-Moreno*, 951 F.2d 1089, 1091 (9th Cir. 1991); *see also Haynes,* 216 F.3d at 796 (deliberate intrusion into attorney-client relationship may violate Fifth Amendment). But dismissal based on prosecutorial misconduct may be warranted "only in cases of flagrant prosecutorial

misconduct," that results in "substantial prejudice" to the defendant. *Chapman*, 524 F.3d at 1085, 1087 (internal quotation marks omitted); *see United States v. Landeros*, 748 F. App'x 135 (9th Cir. 2019) (mem.) (citing cases). "[A]ccidental or merely negligent governmental conduct is insufficient to establish flagrant misbehavior." *Chapman*, 524 F.3d at 1085.

## IV. <u>ANALYSIS</u>

### A.    The "Lexus Nexus" Documents

As to the missing "Lexus Nexus" documents, the court finds no wrongdoing by the United States. While the court cannot speculate as to what happened to the missing documents, the court finds SA MacPherson's testimony that he did not remove, destroy, or alter the documents in Control #6 to be fully credible. Stated differently, the court determines that there was no violation of the attorney-client privilege by the United States because there is no evidence that the prosecution team ever obtained any "Lexus Nexus" documents, let alone then hid or destroyed them.[18]

---

[18]  Relatedly, Defendant also seeks, in a separate motion, for the United States to return all privileged documents obtained from the March 21, 2019 search. *See* ECF No. 801 (denying motion, but noting that "[t]o the extent Defendant seeks the return of privileged materials seized during the March 21, 2019 search, the court will address this request in its order"). However, because the court finds that the United States does not possess any privileged materials from the March 21, 2019 search, such request is DENIED. Further, to the extent Defendant is seeking to have returned *all* privileged materials (i.e., the images of the four strategy boards procured from

(continued . . .)

**B.     The Four Strategy Boards**

Understanding the importance of the attorney-client and work-product privileges to our system of justice, the court entrusted the United States with a unique responsibility to ensure that *any and all* privileged material seized pursuant to the iCloud warrant was not provided to the prosecution team.  And in this task, the United States failed.

As the United States was certainly aware, the responsibility to protect these privileges is particularly important when using a taint team in a criminal proceeding—some courts have concluded, rightfully so, that taint team procedures may "create an appearance of unfairness."  *United States v. Neill*, 952 F. Supp. 834 (D.D.C. 1997); *see In re Search Warrant Issued June 13, 2019*, 942 F.3d at 182 ("Appearances of unfairness are especially apparent in these proceedings, in that the [Taint] Team includes prosecutors employed in the same judicial district where Law Firm clients are being investigated") (internal quotation marks omitted). Further, many courts have also been highly critical of taint teams because "the government's fox is left in charge of the [criminal defendants'] henhouse, and may err by neglect or malice, as well as by honest differences of opinion."  *In re Grand*

_____

the iCloud search warrant), there is no physical property to return as the images are all digital—accordingly, as discussed further below, the *suppression* of the HEIC files is the appropriate remedy.

*Jury Subpoenas*, 454 F.3d 511, 523 (6th Cir. 2006); *see also United States v. SDI Future Health, Inc.*, 464 F. Supp. 2d 1027, 1038 (D. Nev. 2006) ("[T]he court recognizes that other courts have questioned and/or rejected the use of the taint team procedure."). Specifically,

> taint teams present inevitable, and reasonably foreseeable, risks to privilege . . . . That is to say, the government taint team may have an interest in preserving privilege, but it also possesses a conflicting interest in pursuing the investigation, and, human nature being what it is, occasionally some taint-team attorneys will make mistakes or violate their ethical obligations.

*In re Grand Jury Subpoenas*, 454 F.3d at 523.

Here, SA Kindred was tasked with "conduct[ing] . . . [the] filter review for potentially privileged material from the iCloud search warrant." ECF No. 693-3 at PageID #7747 (Kindred Decl. ¶ 3). When he could not open the HEIC files, instead of seeking IT assistance or even simply conducting a Google search to determine why the file would not open, he *presumed* the documents were not privileged and thus provided them to the prosecution team. *Id.* at PageID #7748-49. Of course, the exact opposite presumption should apply—if a taint team cannot determine if a document is privileged or not, that document must be shielded from the prosecution team. Stated differently, only documents *known* to be privilege-free should pass from the taint team to the prosecution team. And because SA Kindred did not take *any* steps to try to open the HEIC files prior to

forwarding them to the prosecution team, his action can best be characterized as demonstrating a total disinterest in both the rights of Defendant and the court's expectation that the taint team would fulfill its obligation to the court.[19]

In fact, as the United States has shown through AUSA Albanese's declaration, the extra precautions SA Kindred could have taken to protect Defendant's rights would have been minimal. AUSA Albanese, in conducting a further taint review of the HEIC files, discovered a rather simple "work-around"— email the files to an Apple device and then open the files on that device. Similarly, a quick search on the internet would have identified the software update needed to open HEIC files on a Windows device. *See* ECF No. 693-5 at PageID #7758. In short, the court is deeply troubled with the lack of effort and concern demonstrated by the United States when entrusted with such a vital responsibility.

And the United States' written responses to Defendants' motions reflect a disappointing lack of recognition of this wrongdoing—in fact, several astonishing statements were made in its response. *See* ECF No. 693 at PageID #7727 ("[I]t has been determined that item numbers 1620, 1623, 1625, and 1627

---

[19] And this indifference was also evident in SA Kindred's declaration, even after he learned about the disclosure of privileged information to the prosecution team. That is, his declaration states that because the "thumbnail" files were too small to view, "the images were unintelligible and revealed no potentially privileged information." ECF No. 693-3 at PageID #7749. In other words, because SA Kindred could not determine if the images were privileged after a cursory inspection, in his mind they were not.

are in fact privileged, but there was no failure to follow taint review protocols. Similarly, based on the facts here, there was no improper disclosure of privileged material to the prosecution team.");[20] *see also* ECF No. 693-3 at PageID #7750 (Kindred's declaration attesting "[he] followed filter team protocols in [his] review for potentially privileged materials and exercised due diligence in executing [his] responsibilities as the filter agent.").[21]

      With this analysis, the court turns to the appropriate remedy.

## C.    **Appropriate Remedy and Sanction**

      Regardless of its conduct,[22] the United States points out that there was no prejudice or harm to Defendant because no member of the prosecution team has actual knowledge of the contents of the four strategy boards (despite having constructive knowledge), and it has now revised its taint team procedure to prevent

---

[20] As the court stated during the March 4, 2020 hearing, this statement may be *literally* true, but nonetheless is shocking. That is, perhaps there was no failure to follow taint review protocols; but, if true, those protocols were obviously wholly deficient.

[21] Unlike the almost defiant tone in the United States' briefing, the United States Attorney's Office chief of the criminal division appeared at the March 4 hearing and recognized that the United States fell well short of the court's expectations.

[22] And, to be clear, the court's finding of misconduct is limited *solely* to the taint team procedure reviewing the items seized from Defendant's iCloud account. As stated earlier, the court finds no misconduct in the taint team process as to the missing "Lexus Nexus" documents.

such a future error.[23]

The court agrees that Defendant was not prejudiced. The prosecution team has shown that nobody on the team has viewed the contents of the four strategy boards. In fact, not until AUSA Albanese, as a taint AUSA, discovered the work-around, no one on the taint team *nor* the prosecution team viewed *any* HEIC files, let alone the HEIC files containing the four strategy boards. And Defendant has not shown that the prosecution team possesses or has viewed any other privileged documents (either as a HEIC file or any other file).[24] Thus, there is no evidence that anyone on the prosecution team had actual knowledge of the contents of the four boards (despite having constructive knowledge) or any other privileged materials; to the extent anyone on the prosecution team may have viewed the contents of the three of the four strategy boards, it was through

---

[23] The United States also argues that any error was harmless because Defendant waived any privilege over three strategy boards that she herself disclosed in her November 19, 2019 motion. While Defendant should have sought leave to file those strategy boards under seal, she is pro se and was simply attempting to notify the court of the United States' potential wrongdoing. Regardless, any error made by Defendant does not mitigate the United States' obvious negligence.

[24] During a February 21, 2020 hearing, Defendant identified numerous other documents provided to the prosecution team that she alleges are privileged. *See* ECF No. 679. The court directed Defendant to explain how these documents were privileged, s*ee id.*, and she then provided her response in two filings, ECF Nos. 731 & 733, which were docketed as motions. But none of the explanations provided by Defendant demonstrates that either the attorney-client privilege or work-product doctrine are implicated in any of those documents. Defendant also raised matters in these two filings beyond the scope of this court's February 21, 2020 order, ECF No. 679, which thus are not properly before the court.

Defendant's own disclosure by attaching these images as exhibits in her own filings.  *See* ECF No. 345-1 at PageID #3240-42.  Accordingly, Defendant has not shown any actual injury or prejudice from the disclosure of the four strategy board HEIC files to the prosecution team, let alone any injuries arising to a violation of her constitutional rights.  Put differently, Defendant has not shown, and the court does not find, that Defendant's constitutional rights have been violated by the disclosure of the four strategy boards.  *See Clutchette v. Rushen*, 770 F.2d 1469, 1470 (9th Cir. 1985) ("Standing alone, the attorney-client privilege is merely a rule of evidence . . . .  In some situations, however, government interference with the confidential relationship between a defendant and his counsel may implicate Sixth Amendment rights . . . [but] only when it substantially prejudices the defendant.") (internal citations omitted).  Given this finding, dismissal of the FSI is unwarranted.  Dismissal is an extraordinary remedy, and requires a showing that Defendant was substantially prejudiced from the United States' outrageous conduct.  *Chapman*, 524 F.3d at 1087.

  As an alternative, Defendant seeks the suppression of all the materials obtained from her iCloud account, ECF No. 748 at PageID #8129, while the United States in turn argues that the appropriate remedy is to suppress only the images of the four strategy boards, ECF No. 739 at PageID #8105-06.  And at the March 4, 2020 hearing, the attorney for the United States suggested another

possible remedy—suppression of all HEIC files on the iCloud account, whether privileged or not.  ECF No. 738 at Page ID #8054.[25]

The court finds Defendant's proposed sanction, suppression of all the documents obtained from the iCloud account, to be too disproportionate to the violation.  *See United States v. Esformes*, 2018 WL 5919517, at *34-35 (S.D. Fla. Nov. 13, 2018) (adopting the magistrate judge's findings "that the prosecutors and agents . . . failed to uphold the high standards expected from federal agents and prosecutors from the [federal Government]" including that "the Government conducted multiple errors over the course of its investigation and infringed on [defendant's] attorney-client and/or work product privileges," but declined to dismiss the indictment, and instead, suppressed privileged evidence, because it found that the defendant was minimally prejudiced).  Thus, the court declines to suppress all files from the iCloud search warrant (amounting to over 6,563 pages) as overly broad.

The court finds the appropriate remedy is to suppress all 473 HEIC files obtained from the iCloud account.  First, the court finds this sanction appropriate given the reckless and grossly negligent conduct demonstrated by the

---

[25]  During the March 4, 2020 hearing, the United States represented that the iCloud production contained 473 HEIC documents.  *Id*. at PageID #8046; *see also* Kindred Decl., ECF No. 693-3 at PageID #7748.

taint team.  As set forth above, the United States' conduct cannot be described as a mistake or honest disagreement of opinion; instead, it demonstrated a clear lack of concern for Defendant's rights and its obligations to this court.  This sanction will also serve as a deterrent.  Although the United States will be precluded from using files that contain non-privileged information, at the same time, this sanction is proportionate because the taint team turned over all HEIC files (not just the four strategy boards) to the prosecution team before determining whether those files contained privileged information.

## V.  <u>CONCLUSION</u>

Based on the foregoing, Sullivan's "Motion to Dismiss Based on Violation of Attorney Client Privilege Communication," ECF No. 345; her "Motion for Leave to File This Motion in Limine to Exclude <u>All</u> Evidence Derived From <u>All</u> 'Native' Files," ECF No. 667; and her "Motion for Leave to File This Motion in Limine Because Non-Discoverable Attorney-Client Priviledge (sic) & Defense Work Product Information was Unconstitutionally Disclosed on Discoverable Disc 13, 16, 18, 22," ECF No. 670, are DENIED in part and GRANTED in part.  They are DENIED to the extent the motions seek to dismiss the FSI or to suppress the use of all documents obtained from the iCloud search.

The Motions are GRANTED to extent all 473 HEIC files obtained from the iCloud search warrant are hereby suppressed for use at trial.

ECF Nos. 731 and 733 are DENIED as moot.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, April 9, 2020.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*United States v. Sullivan*, Cr. No. 17-00104 JMS-KJM, Order Granting in Part and Denying in Part Defendant's Motions Alleging Violations of the Attorney-Client Privilege, ECF Nos. 345, 667, & 670