IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>LEIHINAHINA SULLIVAN,<br><br>Defendant. | CR. NO. 17-00104 JMS<br><br>ORDER DENYING DEFENDANT'S "MOTION TO CORRECT SENTENCE BASED ON RETROACTIVE CRIMINAL HISTORY CATEGORY OF THE UNITED STATES SENTENCING GUIDELINES ('USSG') SECTION 1B1.10, AMENDMENT 821," ECF NO. 1650 |

**ORDER DENYING DEFENDANT'S "MOTION TO CORRECT SENTENCE BASED ON RETROACTIVE CRIMINAL HISTORY CATEGORY OF THE UNITED STATES SENTENCING GUIDELINES ('USSG') SECTION 1B1.10, AMENDMENT 821," ECF NO. 1650**

## I. INTRODUCTION

Before the court is pro se Defendant Leihinahina Sullivan's ("Defendant") November 6, 2024, Motion seeking a sentence reduction pursuant to Amendment 821 of the United States Sentencing Guidelines ("Guideline" or "Guidelines"). ECF No. 1650.[1] Specifically, Defendant claims that she is entitled to a reduction of her sentence because: (1) she is a "zero point" offender and thus

---

[1] On January 2, 2024, Defendant filed her first motion based on Amendment 821, ECF No. 1619. Defendant then moved to withdraw the January 2, 2024 motion, which the court granted. *See* ECF Nos. 1626, 1627. Given Defendant's pro se status, the court will consider the arguments made in both the January 2 and November 6 motions.

entitled to a two-level reduction in her Guideline range; and (2) her criminal history category should be reduced because she received two "status points" at sentencing that are no longer applicable. The court addresses each claim in turn.

## II. LEGAL FRAMEWORK

A district court is authorized by 18 U.S.C. § 3582(c)(2) to reduce a defendant's sentence that was "based on a sentencing range that has subsequently been lowered by the Sentencing Commission," but only if (1) "the reduction is consistent with applicable policy statements issued by the Sentencing Commission" and only (2) "after considering the factors set forth in section 3553(a) to the extent that they are applicable." Under this two-step process, a "court must first determine that a reduction is consistent with [Guideline Policy Statement] § 1B1.10 before it may consider whether the authorized reduction is warranted, either in whole or in part, according to the factors set forth in § 3553(a)." *See Dillon v. United States*, 560 U.S. 817, 826–27 (2010).

At step one, a Guideline § 1B1.10 sentence reduction is not authorized under 18 U.S.C. § 3582(c)(2) unless (1) an amendment listed at § 1B1.10(d) applies to the defendant, and (2) the amendment has the effect of lowering the defendant's applicable Guideline range. *See* Guideline § 1B1.10(a)(2). Here, Guideline Amendment 821, which is listed in § 1B1.10(d), applies to both the

2

status points amendment under Guideline § 4A1.1 and zero-point offender amendment under Guideline § 4C1.1.

> At step two,
>
> § 3582(c)(2) instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by reference to the policies relevant at step one is warranted in whole or in part under the particular circumstances of the case. Because reference to § 3553(a) is appropriate only at the second step of this circumscribed inquiry, it cannot serve to transform the proceedings under § 3582(c)(2) into plenary resentencing proceedings.

*Dillon*, 560 U.S. at 827. With this legal framework, the court turns to the zero-point offender and status point amendments.

### III. ANALYSIS

**A.   Zero-Point Offenders**

Guideline § 4C1.1 provides for a 2-level downward adjustment for "Certain Zero-Point Offenders"—that is, defendants with no criminal history whose offenses fit within certain criteria set forth in the Guidelines. *See* Guideline § 4C1.1(a). Here, because Defendant is not eligible for a § 4C1.1(a) reduction, the court cannot modify her sentence under that provision.

On March 28, 2023, Defendant was sentenced to a total of 180 months imprisonment in this case (Cr. No. 17-00104 JMS) and 24 months imprisonment in

Cr. No. 21-00096 JMS, with the sentences to run consecutively.[2]  ECF No. 1527.  The 180-month sentence was based, in part, on a Guideline total offense level 33 and criminal history category III, resulting in an advisory guideline range of 168 to 210 months.  The criminal history category III was based in part on Defendant having two criminal history points for prior convictions.  *See* ECF No. 1385 at PageID.14128–14132 (presentence report) and ECF No. 1531 at PageID.18074 (statement of reasons).

As this background makes clear, Defendant simply does not qualify for a 2-level zero-point offender adjustment—to be eligible, a defendant must "not receive any criminal history points from Chapter Four, Part A."  Guideline § 4C1.1(a)(1).  Here, Defendant received criminal history points and is thus not eligible for a zero-point offender adjustment.

**B.     Status-Points Adjustment**

Effective November 1, 2023, the United States Sentencing Commission retroactively amended Guideline § 4A1.1 to eliminate the addition of two criminal history "status points" for a defendant who commits an offense while under a criminal justice sentence, when that defendant has less than seven criminal

---

[2] The 24-month sentence imposed in Cr. No. 21-00096 JMS was a mandatory minimum and not subject to a reduction under the Guideline § 1B1.10.  *See* ECF No. 181 at PageID.2893 in Cr. No. 21-00096 JMS (explaining in presentence report that a 2-year mandatory minimum applies, and that sentence must be imposed consecutively to any other sentence).

4

history points.  Guidelines App. C Supp., Amend. 821 (Nov. 1, 2023); Guideline § 4A1.1(e).

> **1.     *A Sentence Reduction Is Authorized by Guideline § 1B1.10***

Here, Defendant had two prior convictions—a 2005 conviction in Hawaii State Court for tampering with a government record and a 2012 conviction in Hawaii State Court for seven counts of unauthorized computer access. Defendant received one criminal history point for each of these convictions, for a total of two criminal history points.  Based on the then-existing Guideline § 4A1.1, two additional points were added because Defendant "committed the instant offense while under a criminal justice sentence" for the 2012 conviction.  ECF No. 1514 at PageID.17851.  She thus received a total criminal history score of four, resulting in a criminal history category III.  *Id*.

But under Amendment 821, the two status points (for committing the instant offense while under a criminal justice sentence) no longer apply, resulting in a total criminal history score of two, which falls into criminal history category II.  *See* Guideline Sentencing Table.  This lowers Defendant's advisory Guideline range from 168 to 210 months (Guideline offense level 33 and criminal history category III) to 151 to 188 months (Guideline offense level 33 and criminal history category II).  *Id*.  Thus, at step one, the status-point offender Guideline amendment applies to Defendant, and that amendment has the effect of lowering Defendant's

5

applicable Guideline range. The court turns to step 2—a consideration of the relevant § 3553(a) factors.

> ### 2. *Considering the Particular Circumstances of This Case, a Sentence Reduction Is Not Warranted Under the Relevant § 3553(a) Factors*

Relevant § 3553(a) factors include: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;" and

> (2) the need for the sentence imposed . . . (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(1)–(2). And, under the parsimony clause, "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth" in § 3553(a)(2). 18 U.S.C. § 3553(a).

Taking into account the position of the parties, the particular circumstances of this case, and after a careful consideration of the relevant § 3553(a) factors, the court determines that a reduction of Defendant's sentence is not warranted.[3] *See Dillon*, 560 U.S. at 827.

---

[3] In determining whether to reduce Defendant's 180-month sentence imposed in Cr. No. 17-00104 JMS, the court understands that it can consider the entire sentence imposed (204 months, which includes the mandatory and consecutive 24-month sentence imposed in Cr. No. 21-00096 JMS) when engaged in the § 3553(a) analysis under step 2. *Cf. Dean v. United States*, 581 U.S. 62, 69 (2017) (determining that court may consider a mandatory minimum sentence
(continued . . . )

The court starts with the offense conduct. Defendant engaged in three separate schemes: (1) a tax fraud scheme involving the filing of over 300 false federal tax returns and 300 false state tax returns, with 50 separate taxpayer victims and an actual tax loss of over $2,700,000, ECF No. 1514 at PageID.17817–17824; (2) a credit card fraud scheme involving 34 credit cards, with over $1,000,000 fraudulently charged and over $140,000 charged-off by the banks, *id*. at PageID.17825–17827; and (3) an education fraud scheme involving fraudulent financial aid applications resulting in the disbursement of over $537,000, *id.* at PageID.17828–17832.

Defendant went to great lengths to conceal her illegal activity, directing fraud proceeds into at least 15 different bank accounts that she controlled or had access to. *Id*. at PageID.17834. She used a nonprofit organization, Mobile Native Hawaiian Health ("MNHH"), to obtain individuals' personal identifying information, to funnel fraud proceeds, and to provide apparent legitimacy to her fraud. *See*, *e.g.*, *id*. at 17816–17817. She even used her minor son's bank account to deposit fraud proceeds. *See id*. at PageID.17806, 17816–17817.

As the court stated at sentencing:

---

imposed under 18 U.S.C. § 924(c) when determining a just sentence using the § 3553(a) factors for a predicate count). Regardless, for the reasons stated in this Order, a reduction of the total sentence of 204 months is not warranted.

> [T]he criminal conduct across the board was staggering in its scope, length and complexity. It was staggering in the boldness in which Ms. Sullivan would engage in this conduct. . . . [W]hen I say bold, I mean it's just the sheer number of tax returns and credit cards and just the natural ability to lie and lie and lie. And it seems as if, when you look at this offense conduct, that lies come easier to Ms. Sullivan than the truth. And behind all of this is unrelenting greed. And that's evidenced by both the offense conduct itself and by the fact that [Defendant] continued to engage in this conduct after indictment.

ECF No. 1579 (sentencing hearing transcript) at PageID.19547–19548.

Further, in weighing the nature and circumstances of the offense, Defendant engaged in obstructive (if not criminal) conduct after first indicted. On November 8, 2017, a First Superseding Indictment ("FSI") charged Defendant with the filing of false tax returns of T.K. and R.C. while the case against Defendant was pending.[4] *See* ECF No. 1; ECF No. 27 at PageID.86; and ECF No. 1514 at PageID.17835. The United States filed a motion to revoke bail, and in response Defendant filed declarations of T.K. and R.C. stating that Defendant did not prepare the disputed tax returns. ECF No. 43-1 at PageIDs.305–307; ECF No. 43-2 at PageID.308–309. These declarations, however, were false. *See* ECF No. 1514 at PageID.17835; ECF No. 41-3; ECF No. 41-5; & ECF No. 41-6.

---

[4] The FSI alleges that Defendant filed or caused to be filed T.K.'s tax return on February 28, 2017, and R.C.'s tax return on April 22, 2017. ECF No. 27 at PageID.86. She made her initial appearance in court and was arraigned on the original indictment on February 24, 2017. ECF No. 8.

Defendant also attempted to tamper with witnesses who testified in the grand jury. Several tax fraud victims reported that Defendant told them to assert a Fifth Amendment privilege in the grand jury, and Defendant texted grand jury witness S.D.: "Remember you answer 'don't know.' Even if you think you know." ECF No. 1514 at PageID.17836. D.M., a friend of S.D., testified that Defendant told him to lie to the grand jury regarding S.D. *Id*.

Defendant's obstructive conduct continued into an evidentiary sentencing hearing in which she testified. As stated by the court at sentencing, Defendant testified "that she never misrepresented that she was acting on behalf of a charitable institution, MNHH, in committing any offense. This clearly is material and false." ECF No. 1579 at PageID.19494. She also committed perjury when she testified that "Henry Tanner's mother gave her permission to use the information in the aid application, including stating that he was homeless." *Id*. at PageID.19498.

Defendant's criminal history is also a concern. Having completed law school, Defendant applied for a low-interest loan for Native Hawaiians with the Office of Hawaiian Affairs ("OHA"). ECF No. 1514 at PageID.17848. She was approved for the loan, under the condition that she pass the Hawaii State bar exam. On October 15, 2004, defendant provided OHA with a "Notice of Passing" the bar. But when OHA called the Hawaii Supreme Court to confirm the results, it was

9

determined that Defendant in fact failed the bar exam.  Defendant fraudulently altered the Notice of Passing to include her name.  *Id*. at PageID.17849.  When asked by law enforcement about the bar results, Defendant blamed her sister, and denied altering the Notice of Passing.  *Id*.  This conduct resulted in a 2005 conviction in Hawaii State Court for tampering with a government record.  *Id*. at PageID.17848.  And several years later, in 2012, Defendant was convicted of seven counts of unauthorized computer access under Hawaii State law.  *Id*. at PageID.17850.

Despite the overwhelming evidence of Defendant's fraudulent conduct, she never accepted responsibility for her actions.  As one example, she blamed others during her sentencing hearing.  As the court stated,

> you've proven today in your allocution that you still haven't understood what you've done or accepted responsibility in any way. . . . And you got up here today and did what you always do, point a finger somewhere else.  Point a finger somewhere else.  You deflect blame and have no insight into your own wrongdoing.

ECF No. 1579 at PageID.19550–19551.

At sentencing, the court also commented on the paucity of mitigating evidence relating to the offense or in Defendant's history:

> Now, I looked and tried to determine what are the mitigating factors.  And I tell you there's not much on that side of the ledger.  I know that you have mental health issues.  We've been through that.  You have two children.  I don't doubt that you love your children.  I

10

> have no reason to doubt that. You're going to be a
> grandma soon apparently. But other than that, it's very
> hard for me to find mitigating evidence in this case. It's
> just very difficult to find in the record or even through
> the course of this litigation.

*Id*. at PageID.19552.[5]

Given the totality of the circumstances, and taking into account the § 3553(a) factors and the parsimony clause, the court does not believe that reducing Defendant's sentence is appropriate. As the court stated at sentencing:

> And I'm going to say something I've said only a few
> times in my coming up, I guess, on 18 years as a
> judge, which is, I am firmly convinced that if you
> don't change, and I see no indication you have the
> insight to change, you will continue criminal conduct
> when you're released. I just see that as inevitable
> almost in your case. Because you refuse to look
> inward. You refuse to do so. Your own husband said
> that you're incapable of following the rules and think
> only of yourself. And that's what I've seen. Incapable
> of following the rules.

*Id*. at PageID.19551–19552.

---

[5] The court, of course, can also consider post-offense conduct as part of the step 2 analysis. *See United States v. Trujillo*, 713 F.3d 1003, 1010 (9th Cir. 2013). In her earlier filed § 3582(c) motion (which Defendant later withdrew with the court's permission), ECF Nos. 1619, 1626 & 1627, Defendant pointed out that she completed certain rehabilitation programming while in custody, including a canine handling program, a financial literacy course, a crochet course, and a "talking with your doctor (FSA)" course. *See* ECF No. 1619-2. But also while in custody, Defendant was sanctioned by the Bureau of Prisons eight times prior to her sentencing, and twice after her sentencing. *See* ECF No. 1514 at PageID.17812 & ECF No. 1654-1. The conduct resulting in these sanctions is not suggestive of post-offense or post-sentencing rehabilitation.

Here, the court recognizes that a reduction in Defendant's sentence is authorized based on the status points Guideline amendment. But after considering the relevant § 3553(a) factors, the court determines that a sentence reduction is not warranted under the particular and unique circumstances of this case.[6] The court has set forth some—but not all—of the scope and troubling nature of Defendant's conduct. Given this conduct, a very significant sentence was (and is) appropriate, and a reduction in sentence would, in the court's view, result in a sentence that would not be sufficient to comply with goals of sentencing set forth in § 3553(a)(2), to include the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to afford adequate deterrence, and to protect the public from further crimes by the Defendant.

\\\

\\\

\\\

\\\

\\\

---

[6] The court's decision does not implicate 18 U.S.C. § 3553(a)(6), requiring the court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." First, the scope and nature of Defendant's criminal conduct, coupled with her obstructive conduct and refusal to accept any responsibility for her actions, makes it difficult to identify defendants with similar records found guilty of similar conduct. Second, even under the post-Amendment 821 Guideline calculation, Defendant's sentence of 180 months in Cr. No. 17-00104 JMS falls within the advisory Guideline range of 151–188 months.

## IV. **CONCLUSION**

Defendant's "Motion to Correct Sentence Based on Retroactive Criminal History Category of the United States Sentencing Guidelines ('USSG') Section 1B1.10, Amendment 821," ECF No. 1650, is DENIED.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, December 13, 2024.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge