IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　Plaintiff-Respondent,<br><br>v.<br><br>LEIHINAHINA SULLIVAN,<br><br>　　　　　　　Defendant-Petitioner. | CR. NO.  17-00104 JMS<br>CR. NO.  21-00096 JMS<br>(CIV. NO.  24-00474 JMS-KJM)<br>(CIV. NO.  25-00060 JMS-KJM)<br><br>ORDER (1) DENYING MOTIONS UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY; AND (2) DENYING CERTIFICATE OF APPEALABILTY |

**ORDER (1) DENYING MOTIONS UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY; AND (2) DENYING CERTIFICATE OF APPEALABILITY**

## I.  **INTRODUCTION**

Before the court are two motions filed by pro se Defendant-Petitioner

Leihinahina Sullivan ("Sullivan") to Vacate, Set Aside, or Correct Sentence by a

Person in Federal Custody Under 28 U.S.C. § 2255.[1]  For the reasons discussed

---

[1]  As explained below, Sullivan was charged and pled guilty in two separate cases, Cr. No. 17-00104 JMS and Cr. No. 21-00096 JMS.  On November 6, 2024, Sullivan filed her first § 2255 Motion as to Cr. No. 17-00104 JMS only.  *See* ECF No. 1651 in Cr. No. 17-00104 JMS. Then, on February 10, 2025, Sullivan filed her second § 2255 Motion, applying to her conviction in Cr. No. 21-00096 JMS.  *See* ECF No. 269 in Cr. No. 21-00096 JMS.  At Sullivan's request, on February 26, 2025, the court entered an order clarifying the filing of these two motions:  "The November 6, 2024 § 2255 Motion is deemed to have been filed in Cr. No. 17-00104 JMS only.
(continued . . .)

below, the court DENIES the § 2255 Motions and DENIES a Certificate of

Appealability.

## II. <u>BACKGROUND</u>

**A.    Factual Background and Prior Proceedings**

This case has a long and convoluted history.  This background section

sets forth only those limited facts necessary to understand the general history of the

cases and place the § 2255 Motions into proper context.  As necessary, the court

will address more specific facts as they relate to particular claims raised in the

§ 2255 Motions.

On July 20, 2021, while acting pro se, Sullivan entered a plea of

guilty, pursuant to a plea agreement, to counts 1, 29, and 35 of a Fourth

Superseding Indictment in Cr. No. 17-00104 JMS, and a single-count Information

in Cr. No. 21-00096 JMS.[2]  *See* ECF No. 1202 in Cr. No. 17-00104 JMS and ECF

No. 6 in Cr. No. 21-00096 JMS.  Those matters were consolidated for sentencing,

---

The February 10, 2025 § 2255 Motion is deemed to have been filed in Cr. No. 21-00096 only."
*See* ECF No. 1678 at PageID.21571–21572 in Cr. No. 17-00104 JMS.  Nonetheless, because the
issues in the two cases are intertwined, this single Order addresses both motions.  Unless
indicated otherwise, all ECF citations in this Order are to the docket in Cr. No. 17-00104 JMS.

[2] Counts 1–7, 29–34, and 35–47 in the Fourth Superseding Indictment charged Sullivan
with wire fraud in violation of 18 U.S.C. § 1343.  ECF No. 495.  Each of these groups of counts
related to a different scheme—Counts 1–7 involved a "tax fraud scheme," Counts 29–34
involved an "education fraud scheme," and Counts 35–47 involved a "credit card fraud scheme."
*Id.*; *see also* Presentence Report, ECF No. 1514 at PageID.17817–17833.  The single count
information charged Sullivan with aggravated identity theft in violation of 18 U.S.C. § 1028A (in
relation to the wire fraud offense charged in Count 35 of the Fourth Superseding Indictment).
ECF No. 1 in Cr. No. 21-00096 JMS.

and on March 28, 2023, Sullivan was sentenced to a term of incarceration of 180 months in Cr. No. 17-00104 JMS and 24 months in Cr. No. 21-00096 JMS, with both terms to run consecutive, resulting in a total sentence of 204 months. *See* ECF No. 1530 in Cr. No. 17-00104 JMS and ECF No. 197 in Cr. No. 21-00096 JMS.

Sullivan's change of plea hearing—with various starts and stops— took place over several days in the summer of 2021, including June 22, June 30, July 2, July 7, July 9, July 13, and July 20. *See* transcripts at ECF Nos. 1251, 1259, 1260, 1261, 1262, 1263, & 1264. Sullivan's plea agreement, ECF No. 1203, contains a waiver of her right "to challenge her conviction or sentence or the manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under Title 28, United States Code, Section 2255." ECF No. 1203 at PageID.12435. This waiver contains two exceptions: (1) if the court imposed a sentence above the guideline range as determined by the court, then Sullivan retained the right to collaterally attack "the portion of her sentence greater than specified in that guideline range;" and (2) a claim based on ineffective assistance of counsel. *Id*. at PageID.12435–12436.[3] Sullivan signed the plea agreement under the heading "AGREED." *Id*. at PageID.12446.

---

[3] The court sentenced Sullivan within the guideline range as determined by the court. The 180-month sentence in Cr. No. 17-00104 JMS was based on a guideline offense level 33 and

(continued . . .)

During the June 22, 2021, change of plea hearing, the court discussed the collateral attack waiver in detail with Sullivan. ECF No. 1251 at PageID.13023–13029. Sullivan confirmed that she understood the nature and scope of the waiver. *Id*. at PageID.13024, 13026. And the court explained the waiver again on July 2 and July 20, and again Sullivan confirmed that she understood the nature and scope of the waiver. ECF No. 1260 at PageID.13158–13160; ECF No. 1264 at PageID.13332.

Sullivan was represented by several different counsel from the time of her initial appearance on February 24, 2017 until, after a comprehensive inquiry pursuant to *Faretta v. California*, 422 U.S. 806 (1975), she was permitted to proceed pro se on September 11, 2019. *See* ECF Nos. 8, 229, & 236. Richard Hoke ("Hoke") was appointed as stand-by counsel from November 8, 2019 until February 4, 2022. *See* ECF Nos. 312, 1350.[4] On February 4, 2022, the court terminated Sullivan's pro se status and appointed Criminal Justice Act counsel Rustam Barbee ("Barbee"), who represented her through sentencing. ECF Nos.

---

criminal history category III, resulting in an advisory guideline range of 168 to 210 months. *See* ECF No. 1531 at PageID.18074. The 24-month sentence in Cr. No. 21-00096 JMS carried a two-year mandatory sentence that was required to run consecutive to the sentence imposed in Cr. No. 17-00104 JMS. ECF No. 1514 at PageID.17859. In short, Sullivan was sentenced within the guideline range as determined by the court.

[4] Previously, Richard Gronna served as stand-by counsel from September 11, 2019 until Hoke's appointment on November 8, 2019. *See* ECF Nos. 236, 312.

1349, 1350, & 1527. In all, Sullivan proceeded pro se from September 11, 2019,
through February 4, 2022.

Sullivan's conviction and sentence were affirmed by the Ninth Circuit
on October 30, 2024. ECF No. 1649; *United States v. Sullivan*, 2024 WL 4616191
(9th Cir. Oct. 30, 2024) (unpublished). The Ninth Circuit: (1) affirmed this court's
order revoking Sullivan's pro se status; (2) determined that, consistent with the
plea agreement, at sentencing the government could argue—and the court could
properly consider in arriving at an appropriate sentence—"unproven and
uncharged" offenses; and (3) determined that Barbee did not have a conflict of
interest while representing Sullivan. *Id*.; 2024 WL 4616191, at *1–2. The
Supreme Court denied Sullivan's petition for writ of certiorari on March 24, 2025.
ECF No. 1681; *Sullivan v. United States*, No. 24-6612, 2025 WL 889272 (U.S.
Mar. 24, 2025).

Sullivan now makes a litany of arguments, many of which are barred,
and others of which are without basis in fact or law.

**B.    Procedural Background**

As noted earlier, on November 6, 2024, Sullivan filed her first § 2255
Motion as to Cr. No. 17-00104 JMS only. ECF No. 1651 in Cr. No. 17-00104
JMS. Then, on February 10, 2025, Sullivan filed her second § 2255 Motion,
applying to her conviction in Cr. No. 21-00096 JMS. ECF No. 269 in Cr. No. 21-

00096 JMS.  The United States filed a Response in both cases on March 7, 2025.
*See* ECF No. 1680 in Cr. No. 17-00104 JMS and ECF No. 277 in Cr. No. 21-
00096 JMS.  Sullivan's Reply in both cases was docketed on April 14, 2025 (with
a mailing date of April 2, 2025).[5]  *See* ECF Nos. 1684 & 1684-15 in Cr. No. 17-
00104 JMS; ECF Nos. 286 & 286-3 in Cr. No. 21-00096 JMS.  As noted earlier,
the court issues this single Order to address both § 2255 Motions, given
overlapping subject matter.

### III.  SECTION 2255 LEGAL STANDARDS

The court's review is governed by 28 U.S.C. § 2255(a), which
provides:

> A prisoner in custody under sentence of a court
> established by Act of Congress claiming the right to be
> released upon the ground that the sentence was imposed
> in violation of the Constitution or laws of the United
> States, or that the court was without jurisdiction to
> impose such sentence, or that the sentence was in excess
> of the maximum authorized by law, or is otherwise
> subject to collateral attack, may move the court which
> imposed the sentence to vacate, set aside or correct the
> sentence.

A court may deny a § 2255 motion if "it plainly appears from the
motion, any attached exhibits, and the record of prior proceedings that the moving

---

[5]  The Replies were due on April 7, 2025.  *See* ECF No. 1678 at PageID.21572 in Cr. No.
17-00104 JMS.  Given the mailing date of April 2, 2025, the Replies were timely filed.  *See*
*Houston v. Lack*, 487 U.S. 266, 275–76 (1988) (explaining prison mailbox rule).

party is not entitled to relief."  R. 4(b) Governing § 2255 Proceedings in the U.S.

Dist. Cts.  A court need not hold an evidentiary hearing if the allegations are

"palpably incredible" or "patently frivolous or false" or if the issues can be

conclusively decided based on the evidence in the record.  *Blackledge v. Allison*,

431 U.S. 63, 76 (1977) (internal quotation and citation omitted); *see also United*

*States v. Mejia-Mesa*, 153 F.3d 925, 929 (9th Cir. 1998) (explaining that a "district

court has discretion to deny an evidentiary hearing on a § 2255 claim where the

files and records conclusively show that the movant is not entitled to relief").

Conclusory statements in a § 2255 motion are insufficient to require a hearing.

*United States v. Johnson*, 988 F.2d 941, 945 (9th Cir. 1993) (citation omitted).

Instead, to require a hearing, a petitioner must allege specific facts that, if true,

would entitle the petitioner to relief.  *See United States v. Rodrigues*, 347 F.3d 818,

824 (9th Cir. 2003) (citing *United States v. McMullen*, 98 F.3d 1155, 1159 (9th

Cir. 1996)).

   Several limitations to raising a collateral attack apply to Sullivan's

§ 2255 Motions.  These include restrictions precluding a collateral attack based on:

(1) a plea of guilty; (2) matters decided on direct appeal; (3) a plea agreement

waiver (other than a claim of ineffective assistance of counsel); (4) procedural

default; (5) a claim of ineffective assistance of counsel against stand-by counsel;

and (6) a claim relating to a restitution order.  Further, if "a petitioner does not

allege lack of jurisdiction or constitutional error, an error of law will not provide a

basis for habeas relief unless that error resulted in a complete miscarriage of justice

or in a proceeding inconsistent with the rudimentary demands of fair procedure."

*Hamilton v. United States*, 67 F.3d 761, 763–64 (9th Cir. 1995) (internal quotation

marks omitted); *United States v. Addonzio*, 442 U.S. 178, 185 (1979).

First, as to a plea of guilty, *Tollett v. Henderson*, 411 U.S. 258, 267

(1973) explained:

> [A] guilty plea represents a break in the chain of events
> which has preceded it in the criminal process. When a
> criminal defendant has solemnly admitted in open court
> that he is in fact guilty of the offense with which he is
> charged, he may not thereafter raise independent claims
> relating to the deprivation of constitutional rights that
> occurred prior to the entry of the guilty plea.

Thus, "when the judgment of conviction upon a guilty plea has

become final and the offender seeks to reopen the proceeding [in a collateral

attack], the inquiry is ordinarily confined to whether the underlying plea was both

counseled and voluntary." *United States v. Broce*, 488 U.S. 563, 569 (1989). This

general rule does not apply "where on the face of the record the court had no

power to enter the conviction or impose the sentence." *Id.; see also United States

v. Chavez-Diaz*, 949 F.3d 1202, 1207–08 (9th Cir. 2020) (explaining that the

exception "allows for constitutionally-based appeals—despite an unconditional

guilty plea—where the appeal, if successful, would mean that the government

cannot prosecute the defendant *at all*").  This exception exists where a defendant

challenges the government's jurisdiction to prosecute her for the charges to which

she pled guilty.  *See United States v. Garcia-Valenzuela*, 232 F.3d 1003, 1006–07

(9th Cir. 2000).  Such challenges include claims of vindictive prosecution,

violation of the double jeopardy clause, challenges to the constitutionality of the

statutes underlying the indictment, and claims that the indictment fails to state an

offense.  *Id.* at 1005–06; *see also Class v. United States*, 583 U.S. 174, 178 (2018).

And there is a limitation on raising these claims—they must "be proved by relying

on the face of the indictment and on the record as it existed when the trial judge

accepted the guilty plea."  *Garcia-Valenzuela*, 232 F.3d at 1006 n.2; *see also

Broce*, 488 U.S. at 575–76.

Second, "[w]hen a defendant has raised a claim and has been given a

full and fair opportunity to litigate it on direct appeal, that claim may not be used

as basis for a subsequent § 2255 petition."  *United States v. Hayes*, 231 F.3d 1132,

1139 (9th Cir. 2000); *see also Olney v. United States*, 433 F.2d 161, 162 (9th Cir.

1970) ("Having raised this point unsuccessfully on direct appeal, appellant cannot

now seek to relitigate it as part of a petition under § 2255.").

Third, a waiver of appellate and/or § 2255 rights "is enforced if (1) the

language of the waiver encompasses [the defendant's] right to appeal [or bring a

collateral attack] on the grounds raised, and (2) the waiver is knowingly and

9

voluntarily made." *United States v. Rodriguez*, 49 F.4th 1205, 1212 (9th Cir. 2022) (internal quotation marks omitted).[6] "To discern whether a waiver is knowing and voluntary, we must ask 'what the defendant reasonably understood to be the terms of the agreement when [s]he pleaded guilty.'" *United States v. Medina-Carrasco*, 815 F.3d 457, 461 (9th Cir. 2016) (quoting *United States v. De la Fuente*, 8 F.3d 1333, 1337 (9th Cir. 1993)). The court assesses the knowing and voluntary nature of a waiver "by assessing the knowing and voluntary nature of the plea agreement as a whole." *Rodriguez*, 49 F.4th at 1212. "A plea agreement is made knowingly if the defendant understands the terms and, to a certain extent, the consequences of the agreement. A plea agreement is made voluntarily if the defendant is not induced by promises or threats to enter the agreement." *Id.* (footnote, internal citation, and quotation marks omitted). In other words, as to Sullivan, the § 2255 waiver is enforceable other than to claims of involuntariness of the waiver itself or a claim of ineffective assistance of counsel. *See, e.g.*, *United States v. Abarca*, 985 F.2d 1012, 1014 (9th Cir. 1993); *United States v. Pruitt*, 32 F.3d 431, 433 (9th Cir. 1994) (determining that a defendant may waive the right to file a § 2255 motion to challenge the length of her sentence); *United States v. Carpoff*, 2024 WL 5088762, at *3 (E.D. Ca. Dec. 11, 2024); *Wondra v. United*

---

[6] A waiver of the right to appeal is subject to the same analysis as a waiver of the right to bring a collateral attack. *Rodriguez*, 49 F.4th at 1211–12 and n.3.

*States*, 2024 WL 4665670, at *3 (D. Idaho Nov. 4, 2024) ("A defendant may waive

his statutory right to file a § 2255 motion challenging his sentence, and that waiver

is enforceable."); *see also United States v. Johnson*, 67 F.3d 200, 203 (9th Cir.

1995) (explaining that a defendant who does not "foresee the specific issue that he

now seeks to appeal does not place that issue outside the scope of his waiver");

*United States v. Goodall*, 21 F.4th 555, 562 (9th Cir. 2021) ("When a defendant

waives his appellate rights, he knows that he is giving up all appeals, no matter

what unforeseen events may happen.").[7]

An "illegal sentence" exception applies to a § 2255 waiver.  For this

exception to apply, a defendant must raise a constitutional claim that directly

challenges a sentence.  *See United States v. Wells*, 29 F.4th 580, 589 (9th Cir.

2022).  But this exception is narrow—it is "limited to challenges that the terms of

---

[7] Even without a waiver, the Ninth Circuit held—at a time when the guidelines were mandatory—that a defendant may not raise a guideline computation error under § 2255 unless the specific issue was raised at sentencing or on direct appeal.  *United States v. McMullen*, 98 F.3d 1155, 1157 (9th Cir. 1996).  Here, given Sullivan's waiver, the court need not determine whether this rule remains applicable to a § 2255 challenge under the *advisory* guideline regime. *See United States v. Folk*, 954 F.3d 597, 604 (3d Cir. 2020) (holding that "an incorrect . . . enhancement under the advisory guidelines is not cognizable under § 2255 because it is not a fundamental defect that inherently results in a complete miscarriage of justice"); *United States v. Foote*, 784 F.3d 931, 940–943 (4th Cir. 2015); *Snider v. United States*, 908 F.3d 183, 189 (6th Cir. 2018); *Hawkins v. United States*, 724 F.3d 915, 916 (7th Cir. 2013); *Spencer v. United States*, 773 F.3d 1132, 1139 (11th Cir. 2014); *see also Beckles v. United States*, 580 U.S. 256 (2017) (determining that, because the advisory guidelines merely guide the district court's discretion at sentencing, they are not subject to a void for vagueness challenge).

the sentence itself are unconstitutional," *id*., and thus does not apply to claims that

a conviction was illegal.[8]  *United States v. Goodall*, 21 F.4th 555 (9th Cir. 2021).[9]

Fourth, a § 2255 defendant procedurally defaults claims that could

have been raised on direct appeal but were not.  *Bousley v. United States*, 523 U.S.

614, 622 (1998).  Procedural default can be overcome if a defendant demonstrates

either cause and actual prejudice or actual innocence.  *Id*.  Cause "must be

something external to the [movant], something that cannot fairly be attributed to

[her]."  *Coleman v. Thompson*, 501 U.S. 722, 753 (1991); *Murray v. Carrier*, 477

U.S. 478, 488 (1986).  Thus, a plea agreement appeal waiver provision does not

constitute cause.  *Garcia-Santos v. United States*, 273 F.3d 506, 508 (2d Cir. 2001);

*Norris v. United States*, 2024 WL 4311671, at *8 (S.D. Ala. Sept. 5, 2024).  A

defendant who pled guilty is prejudiced if there is a reasonable probability that, but

for the error, she would not have pled guilty.  *United States v. Werle*, 35 F.4th 1195,

1198 (9th Cir. 2022).  Exceptions to the cause and prejudice requirement include

(1) claims that could not be presented without further factual development, and (2)

---

[8]  This illegal-sentence exception also includes claims that the sentence imposed was not
authorized by the judgment of conviction or exceeded the permissible statutory maximum.
*United States v. Wells*, 29 F.4th 580, 584 (9th Cir. 2022).

[9]  Although *United States v. Atherton*, 106 F.4th 888 (9th Cir. 2024), determined that the
*Wells* rule can apply beyond constitutional challenges to the substantive terms of a sentence, the
three-judge panel opinion in *Atherton* has been vacated and will be heard by the Ninth Circuit en
banc.  2025 WL 1187016 (9th Cir. Apr. 24, 2025).  Regardless, whether applying *Wells* or
*Atherton*, Sullivan's claims fail.

ineffective assistance of counsel claims. *United States v. Braswell*, 501 F.3d 1147,

1149 n.1 (9th Cir. 2007).

Fifth, a defendant proceeding pro se cannot bring a claim of

ineffective assistance of standby counsel. *See United States v. Morrison*, 153 F.3d

34, 55 (2d Cir. 1998) ("[W]ithout a constitutional right to standby counsel, a

defendant is not entitled to relief for the ineffectiveness of standby counsel.");

*United States v. Oliver*, 630 F.3d 397, 414 (5th Cir. 2011) ("Because Oliver had no

constitutional right to standby counsel and because Oliver acted as his own counsel

while he was proceeding pro se, he cannot prevail on a claim that standby counsel

was ineffective.") (italics omitted); *Wilson v. Parker*, 515 F.3d 682, 697 (6th Cir.

2008) ("To the extent [standby counsel] failed to act during trial, Wilson merely

suffered the consequences of his decision to proceed pro se."); *Simpson v.

Battaglia*, 458 F.3d 585, 597 (7th Cir. 2006) ("[T]he inadequacy of standby

counsel's performance, without the defendant's relinquishment of his *Faretta* right,

cannot give rise to an ineffective assistance of counsel claim under the Sixth

Amendment."); *United States v. Sigouin*, 398 F. App'x 208, 209 (9th Cir. 2010)

("[W]e reject Sigouin's contentions that he received ineffective assistance from

standby counsel after he elected to represent himself"); *Faretta*, 422 U.S. at 834

n.46 ("[W]hatever else may or may not be open to him on appeal, a defendant who

elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.'").

And last, a § 2255 motion cannot be used as a vehicle to collaterally attack a restitution order: "28 U.S.C. § 2255 is available to prisoners claiming the right to be released from custody. Claims for other[] types of relief, such as relief from a restitution order, cannot be brought in a § 2255 motion, whether or not the motion also contains cognizable claims for release from custody." *United States v. Thiele*, 314 F.3d 399, 400 (9th Cir. 2002); *see also* 28 U.S.C. § 2255(a).

Because the court concludes that the § 2255 Motions can be decided conclusively based on the existing record, the court will not hold an evidentiary hearing. Further, the court decides the § 2255 Motions without a hearing pursuant to Local Rule 7.1(d).

## IV. **ANALYSIS**

Sullivan raises a myriad of grounds in her § 2255 Motions. Her Motion in Cr. No. 17-00104 JMS raises 26 numbered grounds for relief (numbered "I" through "XXVI"). *See* ECF No. 1651 at PageID.20975–21006. But the numbered claims are preceded by several unnumbered claims alleging ineffective assistance against Barbee (although she also raises ineffective assistance in many

14

of her numbered claims).  *See id.* at PageID.20969–20974.[10]  And her § 2255

Motion in Cr. No. 21-00096 JMS raises three claims (which largely overlap with

claims made in her other § 2255 Motion).  *See* ECF No. 269 in Cr. No. 21-00096

JMS.

Many of these claims are improperly brought under § 2255, and, if

not, they are otherwise without merit.  The court first focuses on claims that the

law permits the court to consider—that is, constitutionally ineffective assistance of

counsel against Barbee.  It then briefly addresses those that are otherwise meritless

and/or barred.

**A.    Ineffective Assistance of Counsel Claims Against Barbee**

**1.    *Legal Standard for Ineffective Assistance of Counsel Claims***

The Sixth Amendment guarantees the right to effective assistance of

counsel at all critical stages of a criminal proceeding, including sentencing.  *See*

*United States v. Gonzalez*, 113 F.3d 1026, 1029 (9th Cir. 1997).  To prevail on an

ineffective assistance of counsel claim, a petitioner must show that (1) counsel's

representation fell below an objective standard of reasonableness, and (2) there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the

---

[10]  This Order refers to ECF page identification numbers alone when referring to the unnumbered claims but refers to ECF page identification numbers and claim number for the numbered claims.

proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668,

687–88, 694 (1984). That is, the petitioner must show not only that there was a

deficiency, but that the deficiency was prejudicial. *Id.* at 692; *see also Wiggins v.

Smith*, 539 U.S. 510, 521 (2003) ("An ineffective assistance claim has two

components: A petitioner must show that counsel's performance was deficient,

and that the deficiency prejudiced the defense."). "[I]t is unnecessary to consider

the prejudice prong of *Strickland* if the petitioner cannot even establish

incompetence under the first prong." *Siripongs v. Calderon*, 133 F.3d 732, 737

(9th Cir. 1998) (citing *Hendricks v. Calderon*, 70 F.3d 1032, 1039 (9th Cir. 1995)).

        Counsel "is strongly presumed to have rendered adequate assistance

and made all significant decisions in the exercise of reasonable professional

judgment." *Strickland*, 466 U.S. at 690. "[S]trategic choices made after thorough

investigation of law and facts relevant to plausible options are virtually

unchallengeable; and strategic choices made after less than complete investigation

are reasonable precisely to the extent that reasonable professional judgments

support the limitations on investigation." *Id.* at 690–91. Conclusory allegations of

ineffective assistance of counsel made with no factual or legal explanation fall well

short of stating a cognizable claim for ineffective assistance of counsel. *See

Blackledge*, 431 U.S. at 74 ("[P]resentation of conclusory allegations unsupported

by specifics is subject to summary dismissal.").

## 2. Sullivan's Allegations of Ineffective Assistance of Counsel

### a. Claims based on events before Sullivan's plea and before Barbee was appointed counsel

Sullivan raises several claims involving events that transpired before she entered a guilty plea on July 20, 2021, and before Barbee was appointed as counsel on February 4, 2022. Specifically, she claims that Barbee: (1) failed to object to the ordering of her psychological records, which occurred in January 2021, ECF No. 1651 at PageID.20969–20971, 20982 (claim "IX"); (2) failed to object to a September 21, 2020 Notice of Intent "to offer the expert testimony of psychiatrist Nathan Pien on the issue of her guilt" filed by stand-by counsel Hoke, *id.* at PageID.20972; ECF No. 1002;[11] and (3) failed to argue a violation of the Speedy Trial Act, ECF No. 1651 at PageID.21005 (claim "XXV").

Sullivan has failed to demonstrate that Barbee's failure to raise these issues—all of which are based on events prior to his appointment and prior to her plea of guilty—falls below an objective standard of reasonableness. A knowing and voluntary guilty plea[12] forecloses a collateral attack as to events antecedent to the guilty plea, unless the court lacked the power to enter a conviction and impose

---

[11] Hoke filed the Notice of Intent on September 21, 2020, but filed a withdrawal of the Notice of Intent the following day. *See* ECF Nos. 1002, 1003.

[12] As explained below, Sullivan's plea, including her § 2255 waiver, was knowing and voluntary.

sentence. *See Broce*, 488 U.S. at 569. And this bar applies to challenges based on

a violation of the Speedy Trial Act. *See United States v. Bohn*, 956 F.2d 208, 209

(9th Cir. 1992) ("By pleading guilty, Bohn waived his right to assert a violation of

the Speedy Trial Act."). Here, none of these claims falls within the *Broce*

exception. In short, because Barbee had no legal basis to object, he cannot have

provided ineffective assistance of counsel by failing to do so.[13]

> b.    *Claims based on events after Barbee was appointed counsel*

Liberally construed, Sullivan also claims that Barbee provided

ineffective assistant of counsel because he: (i) failed to object at sentencing to the

court's consideration of unproven and uncharged conduct, ECF No. 1651 at

PageID.20994 (claim "XVI"); (ii) failed to object to the "use of a minor" guideline

enhancement and failed to object to Sullivan's criminal history as determined by

the presentence report, *id.* at PageID.20998 (claim "XX"); (iii) failed to object to

the government's breach of the plea agreement, *id.* at PageID.21005–21006

(claims "XXIV" and "XXVI"); (iv) failed to ensure that Sullivan had sufficient

time to review the final presentence report, *id.* at PageID.20996, 20998 (claims

"XVIII" and "XXI"); and (v) failed to seek a withdrawal of Sullivan's guilty plea

---

[13] Sullivan also argues that Barbee failed to object when the court terminated Sullivan's pro se status, ECF No. 1651 at PageID.20982 (claim "VIII"). Although this occurred after Sullivan's plea, Barbee could not "object" to an event that took place prior to his appointment. Regardless, Barbee filed a March 29, 2023 motion seeking his withdrawal as counsel and permitting Sullivan to once again represent herself, ECF No. 1376 and 1376-1, which the court denied after an April 1, 2022 hearing. ECF No. 1378.

based on a *Brady* violation by the United States, *id.* at PageID.20998–20999 (claim "XXII"). Each of these claims fails.

> i.    Consideration of unproven and uncharged conduct at sentencing

Sullivan claims that Barbee should have objected to the court's consideration at sentencing of any conduct beyond the specific counts of conviction. In other words, she claims that Barbee failed to object to the consideration of unproven and uncharged conduct at sentencing. This argument fails for two reasons.

First, Barbee made this very argument in his objections to the draft presentence report. *See* ECF No. 1381. Second, on direct appeal the Ninth Circuit determined that the court properly considered "unproven and uncharged" offenses in arriving at a sentence. ECF No. 1649; *Sullivan*, 2024 WL 4616191, at *1. Sullivan cannot raise the same issue again here. *See Hayes*, 231 F.3d at 1139; *Olney*, 433 F.2d at 162.

> ii.    "Use of a minor" guideline enhancement and criminal history calculation

Sullivan claims that Barbee failed to object to both the 2-level increase under the guidelines for "use of a minor" under § 3B1.4 and the calculation of Sullivan's criminal history. But, again, Sullivan is mistaken—

Barbee objected to both.[14]  *See* ECF No. 1381 at PageID.14039, 14041 (objecting, in response to draft Presentence Report, that the 2-level adjustment for use of minor should not be applied as to count 1 and counts 29/35);[15] *see generally* ECF No. 1412 (objecting, in response to June 3, 2022 Presentence Report, to the calculation of criminal history category III).  As is obvious, because Barbee objected to these guideline enhancements, he could not have been ineffective by failing to do so.[16]

      iii.   The government's breach of the plea agreement

Sullivan argues that the government breached the plea agreement "by arguing the charges to which I pled guilty to did not adequately reflect the seriousness of the actual offense behavior."  ECF No. 1651 at PageID.21005 (claim "XXIV"); *see also id*. at PageID.21006 (claim "XXVI") ("The government took the position at sentencing that the charges to which Sullivan pled did not at all

---

[14]  Barbee, in fact, objected to all of the guideline enhancements set forth in the draft presentence report, not just those relating to use of a minor and criminal history.  *See* ECF No. 1381.

[15]  And, as to count 1, the court agreed with Barbee and sustained this objection.  *See* ECF No. 1527.

[16]  During a February 15, 2023 hearing, the court permitted—but did not require—the parties to file further briefing on these two guideline issues.  *See* ECF No. 1578 at PageID.19459–19464.  To the extent Sullivan is claiming that Barbee's failure to submit any *further* briefing on these guideline issues constitutes ineffective assistance of counsel, this claim likewise fails.  Sullivan has pointed to nothing to suggest that Barbee could have expanded or better explained his previously-made objections.  And, regardless, the court fully considered the objections and ruled on them with full knowledge of facts and the law (and agreed with Barbee in part).  There could be no prejudice.

reflect the seriousness of the actual offense behavior."). On direct appeal, the

Ninth Circuit rejected Sullivan's claim that the government breached the plea

agreement for this very reason. ECF No. 1649 at PageID.20960–20961 ("The

government did not breach the plea agreement with statements made at

sentencing."). Given that the Ninth Circuit determined that the government did not

breach the plea agreement at sentencing, it necessarily follows that Barbee could

not have been ineffective in failing to file a motion to withdraw the plea on this

same ground.

      iv.    Sufficient time to review the final presentence report

      Sullivan alleges that Barbee was ineffective for failing to seek a

continuance to permit her sufficient time to review the final presentence report.

ECF No. 1651 at PageID.20996, 20998 (claims "XVIII" and "XXI"). This claim

also fails.

      The court starts by placing in context the long history leading up to

sentencing. A draft presentence report was filed on January 18, 2022, a time when

Sullivan was proceeding pro se. ECF No. 1314. Sullivan filed several objections

or requests relating to the draft report. *See* ECF Nos. 1331, 1332, 1333, 1334,

1345, & 1346. On February 4, 2022, the court terminated Sullivan's pro se status

and struck all of Sullivan's pending sentencing-related filings. ECF No. 1349.

After Barbee was appointed, and based on a stipulation reached by the parties, the

21

court then set new dates for the parties to file objections to the draft report and the

due date for the final report.  ECF No. 1372.  Barbee complied and filed objections

to the draft report on May 18, 2022.  ECF No. 1381.  Further, the parties stipulated

that certain factual and legal matters were in dispute, including the guideline loss

calculations and the standard of proof (preponderance or clear and convincing

evidence) that would apply at the evidentiary hearing.[17]  ECF No. 1383.  A

presentence report, considering all objections filed to date, was then issued on June

3, 2022.  ECF No. 1385.  After the court determined that the government would

need to prove the loss amount by a preponderance of the evidence,[18] ECF No.

1393, an evidentiary hearing was held on October 27 and 28, 2022, and December

16, 2022.  ECF Nos. 1456, 1459, 1488.

On February 15, 2023, the court held a hearing to discuss the

guideline loss calculations.  ECF No. 1578.  After taking into consideration the

evidence received during the evidentiary hearing and the position of the parties, the

court ruled as to how loss should be determined for the tax fraud, credit card fraud,

and education fraud schemes.  The court ruled in Sullivan's favor on two issues,

---

[17]  The plea agreement identified the guideline loss calculation, restitution amount, and forfeiture amount as matters "that are in dispute for the purpose of sentencing . . . ."  ECF No. 1203 at PageID.12434.

[18]  When the court made this determination, certain guideline findings were required to be made by clear and convincing evidence.  Since that time, the Ninth Circuit has clarified that a lesser preponderance of the evidence standard satisfies due process for fact-finding under the guidelines.  *See United States v. Lucas*, 101 F.4th 1158, 1162 (9th Cir. 2024) (en banc).

resulting in a reduction of the total loss amount as set forth in the draft presentence report. *Id.*

Taking into account the court's February 15, 2023 rulings, a final presentence report was issued on March 9, 2023, ECF No. 1514, and a sentencing hearing was held on March 28, 2023. ECF No. 1527. As the hearing started, Barbee pointed out that, due to new rules implemented by Honolulu's Federal Detention Center, Sullivan had not received the March 9, 2023 version of the presentence report. ECF No. 1579 at PageID.19474. The court then recessed from 10:18 a.m. until 11:29 a.m. to permit Sullivan sufficient time to review the final presentence report. *Id.* at PageID.19482. After this break, Barbee informed the court that Sullivan had two objections that she wanted Barbee to forward: the amount of the tax loss and the amount of the credit card loss. *Id.* at PageID.19482–19484. In response to those objections, the court stated that "we had a three-day—total of three-day evidentiary hearing going through these loss amounts and I've ruled . . . ." and "I'm not reopening that hearing." *Id.* at PageID.19485, 19494; *see also id.* at PageID.19494–19500.

Sullivan now claims that even though she informed Barbee that she needed additional time to review the March 9, 2023 version of the presentence report, Barbee proceeded to sentencing. Specifically, she states that "[s]ince Sullivan did not have time to factually dispute the Presentence Report, the record is

23

insufficient for meaningful appellate review." ECF No. 1651 at PageID.20996

(claim "XVIII"); *see also id.* at PageID.20998 (claim "XXI"). Sullivan is incorrect

for several reasons.

First, Sullivan was provided time to review the March 9 presentence

report.[19] Although it certainly would have been preferable had she received the

report earlier, she was given ample opportunity to review it on the day of

sentencing. And most important, the March 9, 2023 report contained limited

changes from the earlier report, reflecting the court's rulings after the three-day

evidentiary hearing. *Compare* ECF Nos. 1385, *with* ECF No. 1514.

Second, the very premise underlying Sullivan's assumption is

incorrect—although she claims that she had insufficient time to file objections to

the March 9, 2023 presentence report,[20] *neither* party was provided an opportunity

to file objections to that report because it was not needed. Instead, objections

were filed to an earlier version of the same report, and the parties agreed to hold

---

[19]  Sullivan appears to claim that she was not provided a spreadsheet containing alterations to the tax loss calculation (in Sullivan's favor) after the evidentiary hearing. *See* ECF No. 1651 at PageID.20997 (claim "XVIV" [sic. "XIX" or 19]). At sentencing, however, Sullivan admitted that she "got those yesterday." ECF No. 1579 at PageID.19520. Further, as explained below, the schedule simply set forth the figures based on the court's ruling after the three-day evidentiary hearing.

[20]  Given sufficient time, Sullivan claims that she would have objected to the following paragraphs of the March 9 report: 1, 2, 5, 7, 9, 10, 12, 14, 15, 19, 20, 21, 22, 24, 26, 33, 34, 35, 39–55, 57–99, 114, 120–122, 124–130, 132, 133, 135–141, 150–154, 156, 158, 159, 163, 172, 177, 178, 181, 182, 184, 185, 190, 192, 196–198, 202–209, 211–223. ECF No. 1651 at PageID.20998.

an evidentiary hearing on disputed matters.  ECF No. 1372.  The court did so, and then ruled on the amount of guideline loss for the tax fraud scheme, the credit card fraud scheme, and the education fraud scheme.  ECF No. 1578.  The court having conducted an extensive hearing and ruled on those matters, there were no further objections to be made.

In sum, Barbee was not ineffective by failing to seek a continuance of the March 28, 2023 sentencing hearing.  Sullivan was given ample opportunity—effectively over a year—to review the substance of the presentence report prior to the sentencing hearing, and her claim that further objections should have been made is frivolous.  And, even assuming Barbee was ineffective, there was clearly no prejudice.  Sullivan has not pointed to any specific objection that she would have made that the court did not fully consider or that would have made any difference at all in her sentence.

v.    Failure to seek withdrawal of guilty plea

Although difficult to understand, it appears that Sullivan argues that the government failed to disclose its view of guideline loss and restitution until after she pled guilty, and that figures provided were "fraudulent."  ECF No.1651 at PageID.20999–21002 (claim "XXII").  This, she claims, is a violation of *Brady v. Maryland*, 373 U.S. 83 (1963).  And because there was a supposed *Brady*

violation, Barbee was allegedly ineffective for failing to seek a withdrawal of Sullivan's guilty plea. This argument fails for several reasons.

First, Sullivan has failed to show any *Brady* violation. She has long maintained that the loss/restitution amounts offered by the government were grossly inflated. *See, e.g.*, ECF No. 1493 (transcript of Sullivan's testimony during sentencing hearing); ECF No. 1523 (Sullivan motion to, in part, recalculate tax loss). As was appropriate, given the differing views on loss amounts, the court held a three-day evidentiary hearing and ruled, in part, in Sullivan's favor. Although Sullivan labels the government's loss/restitution calculations as "fraudulent," in fact they are simply figures that Sullivan disputed at sentencing.[21]

---

[21] Prior to sentencing, Sullivan raised this same issue in a motion claiming that Barbee should be terminated from the case based on his failure to argue the withholding of *Brady* material. ECF No. 1500. The court's February 28, 2023 rejection of her position remains valid today:

> Further, Defendant argues that because the court disagreed in part with the government's tax loss calculation, Mr. Barbee was ineffective in failing to argue a violation of *Brady v. Maryland*, 373 U.S. 83 (1963), on the theory that the government withheld "exculpatory evidence" of a "fraudulent tax formula used to determine [her] alleged liabilities." [ECF No. 1504] at PageID.17077. She apparently believes that she was entitled to know the government's "fraudulent" theory as to tax loss prior to her plea of guilty. Again, Defendant is wrong. The court simply disagreed, in part, with the method that the United States and the probation office used to calculate tax loss at a sentencing hearing. There is simply no evidence of fraud or the withholding of exculpatory evidence.

ECF No. 1507 at PageID.17171.

Second, Sullivan's claim that she "would have elected to proceed to trial" if she had correct information as to the loss calculation, ECF No. 1651 at PageID.21000, rings hollow.  As stated above, Sullivan knew at the time of her plea that the parties disputed the loss amounts—the plea agreement specifically identified guideline loss calculation and the restitution amount as matters "in dispute for the purposes of sentencing . . . ."  ECF No. 1203 at PageID.12434.  And during the July 2, 2021 change of plea hearing, Sullivan confirmed that she understood that the parties had not reached agreement as to the guideline loss calculation, restitution amount, and forfeiture amount, and that those matters "will be subject to a sentencing hearing at a later date."  ECF No. 1260 at PageID.13160. In short, Barbee had no basis to file a motion seeking a withdrawal of Sullivan's plea based on the government's determination of the guideline loss calculation or the amount of restitution due.  His conduct did not fall below an objective standard of reasonableness.

**B.    Claims That the Court Lacked Jurisdiction**

Sullivan claims that there are "jurisdictional" defects relating to the single count Information in Cr. No. 21-00096 JMS and Count 49 of the Fourth Superseding Indictment in Cr. No. 17-00104 JMS, ECF No. 1651 at PageID.20979 (claim "III"), PageID.20985 (claim "XI").  But these "jurisdictional" defects are nothing more than claims that there was an insufficient factual basis as to both of

27

these counts.  *Id*.  And even if these claims were not waived by the plea agreement,
*see United States v. Flores*, 2014 WL 4680204, at *4 (C.D. Cal. Sept. 18, 2014),
they fail.

First, as to Count I of the Information, Sullivan claims that she could
not be guilty of aggravated identity theft because she had permission from Levon
Ohai to use his name as a guarantor to open a corporate credit card account.  *Id*. at
PageID.20979.  But during the July 20, 2021 change of plea hearing, Sullivan
admitted that she used Ohai's name, social security number, and date of birth on
the credit card application *after* Ohai had died.  As is obvious, any permission that
Ohai may have given to act as a guarantor prior to his death was no longer valid
after his death.

Second, as to Count 49 of the Fourth Superseding Indictment,
Sullivan claims, citing a July 2, 2021 change of plea hearing, that she never
provided false information in relation to her daughter's application for a college
scholarship from Kamehameha Schools.  *Id*. at PageID.20985.  But that hearing
was continued until July 9, 2021, where Sullivan admitted that an email she sent to
Kamehameha School was in fact false.  Specifically, in support of the scholarship
application, Sullivan wrote (while posing as her daughter):  "Aloha, Yes, I am
going to the University of California Monterey, but they said they are limited on
the WUE [a program offering reduced tuition] and can't give me WUE tuition.  I

28

have to pay out-of-state tuition . . . ."  ECF No. 1262 at PageID.13276.  Sullivan

admitted that the statement "I have to pay out-of-state tuition" was false, and she

was aware that the statement was false at the time she made it.  *Id.* at

PageID.13277.  In short, there was no "jurisdictional defect."

## C.    The Remainder of Sullivan's Claims

### 1.    *The Plea Agreement Waiver is Valid*

Before discussing the specific claims that remain, the court must

determine whether Sullivan's plea agreement waiver of her § 2255 rights was

knowing and voluntary.  *Rodriguez*, 49 F.4th at 1212.  Here, it was both.

The language of the plea agreement itself is clear:  Sullivan waived

her right "to challenge her conviction or sentence or the manner in which it was

determined in any collateral attack, including, but not limited to, a motion brought

under Title 28, United States Code, Section 2255."  ECF No. 1203 at

PageID.12435.  This broad waiver contained an exception for a claim based on

ineffective assistance of counsel.  *Id.* at PageID.12435–12436.  During Sullivan's

change of plea hearings, the court explained the waiver in detail, and she

confirmed that she understood both the nature and scope of the waiver.  Further,

after a full colloquy, Sullivan understood the terms of the plea agreement and its

consequences.  And, other than the terms of the plea agreement itself, Sullivan was

not "induced by promises or threats" to enter the agreement.  *See* ECF No. 1264 at

PageID.13319–13320.[22]  In short, Sullivan's waiver to bring a collateral attack,
other than based on a claim of ineffective assistance of counsel, was knowing and
voluntary.[23]

### 2.    The Remainder of Sullivan's Claims are Barred

Applying the well-established principles set forth above, the
remainder of Sullivan's claims are barred: (1) by the collateral attack waiver in the
plea agreement ("plea agreement waiver"); (2) because Sullivan entered a plea of
guilty ("guilty plea limitation"); (3) because of procedural default;[24] (4) because
claims were decided on direct appeal ("direct appeal limitation"); and/or (5)
because the claims are not cognizable under § 2255.  Many of the claims are barred
for multiple reasons.  Specifically:

(1)  Prosecutorial misconduct relating to the release of Sullivan's psychiatric
records to the prosecution in March, 2021, ECF No. 1651 at PageID.20972—this

---

[22]  During the July 20, 2021 change of plea hearing, the court asked Sullivan whether
"anyone threatened you or anyone else or forced you in any way to plead guilty?"  She answered
"No."  ECF No. 1264 at PageID.13319–13320.  The court then asked Sullivan if she was
"pleading guilty of your own free will because you are guilty?"  She responded: "Yes."  *Id.* at
PageID.13320.

[23]  The court reached the same conclusion in August 23, 2021, Order denying Sullivan's
request to withdraw from her guilty plea.  As previously stated, "[a]ll in all, the court has taken
extremely careful measures to ensure that the plea was knowing and voluntary."  ECF No. 1218
at PageID.12619.

[24]  For each claim subject to procedural default, Sullivan has failed to show cause and
actual prejudice.  Likewise, she has not demonstrated actual innocence.

claim is barred by the plea agreement waiver, the guilty plea limitation, and/or procedural default;[25]

(2)  Sullivan did not agree to proceed with a change of plea by video, *id*. at PageID.20975 (claim "I")—this claim is barred by the plea agreement waiver, the guilty plea limitation, and/or procedural default;[26]

(3)  The court engaged in misconduct by changing the terms of Sullivan's plea agreement in violation of Federal Rule of Criminal Procedure 11(c), *id*. (claim "II")—this claim is barred by the plea agreement waiver and/or procedural default;[27]

(4)  The court erred in revoking Sullivan's pro se status, *id*. at PageID.20979 (claim "IV"), PageID.20992–20993 (claim "XV")—this claim is barred by the plea agreement waiver and/or the direct appeal limitation;

---

[25]  And, in any event, Sullivan fails to provide a meaningful explanation as to how the release of these records resulted in a complete miscarriage of justice.

[26]  In fact, Sullivan consented to proceed with her change of plea by video under the CARES Act.  *See* ECF Nos. 1184; ECF No. 1264 at PageID.13313–13314.

[27]  Further, as explained in ECF No. 1442, the court simply inquired as to contradictory language in the plea agreement, but never violated Rule 11(c).

(5)  The court should have recused itself when it viewed an ex parte submission, *id*. at PageID.20980 (claim "V")—this claim is barred by the plea agreement waiver, the guilty plea limitation, and/or procedural default;[28]

(6)  Prosecutorial misconduct relating to "fake grand jury investigation," *id*. (claim "VI")—this claim is barred by the plea agreement waiver, the guilty plea limitation, and/or procedural default;

(7)  Violation of the Speedy Trial Act and the statute of limitations in relation to the Fourth Superseding Indictment, *id*. at PageID.20980–20981 (claim "VII"), PageID.21002–21005 (claim "XXIII")—these claims are barred by the plea agreement waiver, the guilty plea limitation, and/or procedural default;[29]

(8)  The court erred in refusing to terminate Barbee as Sullivan's counsel based on a conflict of interest, *id*. at PageID.20984 (claim "X")—this claim is barred by the plea agreement waiver and/or the direct appeal limitation;

---

[28]  The nature of this claim is unclear, and Sullivan provides no argument or evidence to suggest that the court's review of an ex parte submission was inappropriate or resulted in a complete miscarriage of justice.

[29]  In her § 2255 Motion filed in Cr. No. 21-00096 JMS, Sullivan also argues that the 18 U.S.C. § 1028A(a)(1) aggravated identity theft charge violated the statute of limitations, which she refers to as a jurisdictional requirement that cannot be waived.  ECF No. 269 at PageID.4780–4781.  Contrary to this assertion, a defense based on the statute of limitations is not jurisdictional and may be waived.  *See United States v. Akmakjian*, 647 F.2d 12, 14 (9th Cir. 1981); *see also United States v. Littlefield*, 105 F.3d 527, 528 (9th Cir. 1997) (stating that a defendant's claims that a conviction is barred by the statute of limitations "is foreclosed by his plea").  Here, Sullivan knowingly and voluntarily waived any statute of limitation defense in her plea agreement.  ECF No. 1203 at PageID.12421 (stating, in the plea agreement, that Sullivan "waives any statute of limitation defense to the offense charged in the Information.").

(9)  The court erred in considering unproven and uncharged conduct at sentencing, *id*. at PageID.20987–20991 (claim "XII"), PageID.20992 (claim "XIV"), PageID.20997 (claim "XVIV" [sic. "XIX" or 19])—this claim is barred by the plea agreement waiver and/or the direct appeal limitation;

(10)  The court made various errors in applying the guidelines, *id*. at PageID.20988–20991 (claim "XII"), PageID.20996 (claim "XVII"), PageID.20997 (claim "XVIV" [sic. "XIX" or 19])—these claims are barred by the plea agreement waiver and/or procedural default;[30]

(11)  The court erred in the amount of restitution awarded, *id*. at PageID.20991–20992 (claim "XIII")—this claim is not cognizable under § 2255,

---

[30]  And this claim, even if not waived, is meritless.  In addition to holding a three-day evidentiary hearing on the loss amount under guideline § 2B1.1, the parties briefed, and the court fully considered, several guideline adjustments, including: (1) a two-level increase because the tax fraud scheme involved sophisticated means under guideline § 2T1.1(b)(2), ECF No. 1579 at PageID.19486–19487; (2) a two-level increase for obstruction of justice under guideline § 3C1.1, *id*. at PageID.19492–19494; (3) a two-level increase for Sullivan's misrepresentation that she was acting on behalf of a charitable organization under guideline § 2B1.1(b)(9)(A), *id*. at PageID.19495–19496, PageID.19498; (4) a two-level increase because the education and credit card fraud schemes involved sophisticated means under guideline § 2B1.1(b)(10)(C), *id*. at PageID.19496–19497; (5) a two-level increase for use of a minor relating to the education and credit card fraud schemes under guideline § 3B1.4, *id*. at PageID.19497–19498; (6) a determination of criminal history points under guideline chapter 4, *id*. at PageID.19501–19505; and (7) a lack of acceptance of responsibility under guideline § 3E1.1, *id*. at PageID.19505–19511.  Sullivan has failed to provide any basis to challenge these findings, other than a general disagreement with the court's rulings.  And she certainly has failed to show that the court's guideline rulings resulted in a complete miscarriage of justice or was the result of a proceeding inconsistent with the rudimentary demands of fair procedure.  *Hamilton*, 67 F.3d at 763–64.

*see Thiele*, 314 F.3d at 400, and, in any event, would be barred by the plea

agreement waiver and/or procedural default;

(12)  The court erred in denying Sullivan's request to withdraw her plea

based on a *Brady* violation, ECF No. 1651 at PageID.20999 (claim "XXII")—this

claim is barred by the plea agreement waiver and/or procedural default, and, as set

forth above, there was no *Brady* violation;

(13)  Although not clear, Sullivan may be claiming that Hoke, her previous

standby counsel, provided ineffective assistance of counsel, *see, e.g.*, *id*. at

PageID.20969–20970—this claim is not cognizable in a § 2255 motion.  *See, e.g.*,

*Morrison*, 153 F.3d at 55.  Further, even assuming Hoke was ineffective in his role

as stand-by counsel, Sullivan has shown no prejudice; and

(14)  Standby counsel Hoke violated Sullivan's right to self-representation

when Hoke filed a Notice of Intent to offer the expert testimony of psychiatrist

Ethan Pien, which ultimately led to the court ordering Dr. Pien's records as part of

a competency examination, ECF No. 1684 at PageID.21653—these claims are

barred by the plea agreement waiver, the guilty plea limitation, and/or procedural

default.  And, in any event, the record conclusively shows that Sullivan authorized

Hoke to file the Notice of Intent.  ECF No. 1057 at PageID.10747.  Specifically,

during a September 21, 2020, hearing, Sullivan informed the court that she wanted

to offer psychiatric testimony on the issue of her mental health.  *Id.*  Later that

same day, Hoke filed the Notice of Intent, stating that Sullivan "gives notice of her intent to offer expert testimony by psychiatrist Ethan Pien, M.D., relating to Sullivan's mental disorder as it bears on the issue of guilt." ECF No. 1002-1. The following day, September 22, 2020, Hoke filed a withdrawal of the Notice of Intent. ECF No. 1003. As this context shows, Sullivan herself approved the filing of the Notice of Intent. Moreover, even if she had not approved the filing, she cannot show prejudice because it was withdrawn the day after it was filed.

## V. <u>CERTIFICATE OF APPEALABILITY</u>

In denying the § 2255 Motions, the court must also address whether Sullivan should be granted a certificate of appealability ("COA"). *See* R. 11(a) Governing § 2255 Proceedings in the U.S. Dist. Cts. (providing that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant"). A COA may issue only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

"The standard for a certificate of appealability is lenient." *Hayward v. Marshall*, 603 F.3d 546, 553 (9th Cir. 2010) (en banc), *overruled on other grounds by Swarthout v. Cooke*, 562 U.S. 216 (2011). The petitioner is required to demonstrate only "that reasonable jurists could debate the district court's resolution or that the issues are adequate to deserve encouragement to proceed

further." *Id.* (internal quotations and citation omitted); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (holding that a certificate of appealability should issue only if a prisoner shows, among other things, "that jurists of reason would find it debatable whether the district court was correct in its procedural ruling"). The standard "requires something more than the absence of frivolity, but something less than a merits determination." *Hayward*, 603 F.3d at 553 (internal quotation marks omitted).

The court carefully reviewed Sullivan's assertions and gave her every benefit by liberally construing them. Sullivan had the opportunity to explain her assertions in response to the government's opposition. Based on the above analysis and considering all the allegations in Sullivan's § 2255 Motions and Responses, the court finds that reasonable jurists could not find the court's rulings debatable. Accordingly, a COA is DENIED.

## VI. <u>CONCLUSION</u>

For the foregoing reasons, the court DENIES both of Sullivan's § 2255 Motions (ECF No. 1651 in Cr. No. 17-00104 JMS and ECF No. 269 in Cr. No. 21-00096 JMS) and DENIES a Certificate of Appealability. The Clerk of Court is directed to close the civil case files (Civ. No. 24-00474 JMS-KJM and Civ. No. 25-00060 JMS-KJM) in both cases.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, April 30, 2025.



       /s/ J. Michael Seabright    
J. Michael Seabright
United States District Judge